UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:08-cr-51 |
| | ) | JORDAN / LEE |
| MICHAEL KELLEY | ) | |
| PERRY LAWRENCE | ) | |

## REPORT AND RECOMMENDATION

### I.    Introduction

Before the Court are: (1) the motion of Defendant Perry Lawrence ("Lawrence") to dismiss

the money laundering count – Count Three in the Superseding Indictment [Doc. 122]; (2) the

motions of Defendant Michael Kelley ("Kelley")[1] to dismiss Counts Two, Three, Four, Six and

Seven of the Superseding Indictment [Doc. 125 & 126]; and (3) the *pro se* motions of Kelley to

dismiss the complete Superseding Indictment [Doc. 174] and to dismiss Count One of the Indictment

[Doc. 176].[2]  The motions filed by Lawrence and Kelley (collectively the "Defendants"), have been

referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 200].

The parties have filed memoranda addressing the issues raised in the pending motions [Doc. 123,

125, 126, 147, 148, 151, 175 & 176], which have been carefully revised and fully considered.  In

summary, I find no basis for dismissal with respect to the issues raised in the pending motions

because all of the challenged counts of the Superseding Indictment are sufficient.  For the reasons

---

[1]  Defendant's surname appears in the record as both "Kelley" and "Kelly."  As his surname is spelled "Kelley" in the Superseding Indictment, the Court will use that spelling herein.

[2]  Defendant Ronald Goodwin ("Goodwin") filed a motion to dismiss Counts Six, Seven, Eight and Nine of the Superseding Indictment [Doc. 169] and Defendant John P. Franklin, Jr. ("Franklin") filed a motion to dismiss Count Three of the Superseding Indictment [Doc. 130], which are not addressed herein because both Goodwin and Franklin filed a notice of intent to plead guilty [Doc. 187 & 189].  To the extent necessary for clarity, however, references to Goodwin and Franklin are included herein as needed.

set forth herein, I **RECOMMEND** that Defendants' motions to dismiss be **DENIED**.

## II.    Background

Kelley and Lawrence were named in a multi-defendant Indictment issued by the grand jury on May 13, 2008 [Doc. 2]. A Superseding Indictment was issued by the grand jury on June 24, 2008 [Doc. 71]. With regard to the issues raised by Defendants, the relevant counts of the Superseding Indictment, are set forth below:

### COUNT TWO

The Grand Jury further charges that beginning in or about November, 2007, and continuing until in or about March, 2008, in the Eastern District of Tennessee and elsewhere, the defendant, MICHAEL KELLEY, and others known and unknown to the grand jury, did combine, conspire, confederate and agree to knowingly, intentionally and without authority violate Title 18, United States Code, Section 1956(a)(1)(A)(i), that is, to conduct and attempt to conduct financial transactions affecting interstate commerce which involved proceeds of unlawful activity, that is, the distribution of cocaine, with the intent to promote the carrying on of the unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions, that is, United States currency, represented the proceeds of some form of unlawful activity; in violation of Title 18, United States Code, Section 1956(h).

### COUNT THREE

The Grand Jury further charges that beginning on or about March 5, 2008, and continuing until in or about May, 2008, in the Eastern District of Tennessee and elsewhere, the defendants, MICHAEL KELLEY, JOHN P. FRANKLIN, Jr., PERRY LAWRENCE and others known and unknown to the grand jury, did combine, conspire, confederate and agree to knowingly, intentionally and without authority violate Title 18, United States Code, Section 1956(a)(1)(B)(i), that is, to conduct and attempt to conduct a financial transaction affecting interstate commerce which involved proceeds of unlawful activity, that is, the distribution of cocaine, knowing that the transaction was designed in whole and in part to conceal and disguise the nature and source of the proceeds, and that while

2

conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is, United States currency, represented the proceeds of some form of unlawful activity; in violation of Title 18, United States Code, Section 1956(h).

## COUNT FOUR

The Grand Jury further charges that beginning on or about March 5, 2008, and continuing until in or about May, 2008, in the Eastern District of Tennessee and elsewhere, the defendants, MICHAEL KELLEY, JOHN P. FRANKLIN, Jr., and PERRY LAWRENCE, did combine, conspire, confederate and agree to knowingly, intentionally and without authority violate Title 18, United States Code, Section 1512(c)(2), that is, to corruptly attempt to obstruct, influence and impede an official proceeding, to wit, a Federal grand jury and a proceeding before a judge and a court of the United States.

### MANNER AND MEANS

On March 5, 2008, Hamilton County, Tennessee, Sheriff's Office deputies stopped the vehicle operated by the defendant, MICHAEL KELLEY. A search of the vehicle resulted in the seizure of approximately sixty nine thousand five hundred dollars ($69,500) in United States Currency. The defendant, MICHAEL KELLEY, intended to travel with this cash to meet with another person, known to the grand jury, in order to pay for controlled substances. Thereafter, the defendant, PERRY LAWRENCE, agreed to provide MICHAEL KELLEY with a document evidencing, falsely, that he, LAWRENCE, had loaned $69,500 to KELLEY on February 12, 2008, in order to justify a claim to be submitted to the Hamilton County Sheriff's Office for the cash that had been seized. LAWRENCE had not, in fact, loaned KELLEY the $69,500 that had been seized from KELLEY. The defendant, JOHN P. FRANKLIN, Jr., agreed with KELLEY to cause the false loan document to be officially notarized prior to it being presented to the Hamilton County Sheriff's Office.

### OVERT ACTS

In furtherance of the conspiracy and to achieve the objects thereof, the defendants and their co-conspirators, known and unknown to the grand jury, committed and caused to be committed the following overt acts in the Eastern District of Tennessee and elsewhere:

(1) on or about March 6, 2008, the defendant, PERRY

3

LAWRENCE, then outside the State of Tennessee, caused the false loan document to be sent via FedEx to the defendant, MICHAEL KELLEY, in Chattanooga, Tennessee;

(2) on or about March 7, 2008, the defendant, MICHAEL KELLEY, received the false loan document;

(3) on or about March 7, 2008, the defendant, JOHN P. FRANKLIN, Jr., had a conversation with MICHAEL KELLEY regarding the falsification of the document;

(4) on or about March 7, 2008, the defendant, JOHN P. FRANKLIN, Jr., caused another person, known to the grand jury, to notarize the false loan document, falsely certifying that it was signed on February 12, 2008;

(5) on or about March 7, 2008, the defendant, MICHAEL KELLEY, presented the fraudulently notarized false loan document to an official of the Hamilton County Sheriff's Office to support his claim for the seized money;

all in violation of Title 18, United States Code, Section 371.

## COUNT FIVE

The Grand Jury further charges that on or about April 1, 2008, in the Eastern District of Tennessee, in a matter within the jurisdiction of the United States Department of Treasury, Internal Revenue Service, an agency and department of the United States, the defendant, JOHN P. FRANKLIN, Jr., did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation, that is, that he was contacted by Michael Kelley on or before February 12, 2008, regarding notarizing a loan document, when in fact he was contacted by Michael Kelley regarding notarizing the loan document on or after March 5, 2008, in violation of Title 18, United States Code, Section 1001.

## COUNT SIX

The Grand Jury further charges that in or about March, 2008, in the Eastern District of Tennessee and elsewhere, the defendants, MICHAEL KELLEY, RONALD GOODWIN, and others known and unknown to the grand jury, did combine, conspire, confederate and agree to knowingly, intentionally and without authority violate Title

4

18, United States Code, Section 1956(a)(1)(B)(i), that is, to conduct and attempt to conduct a financial transaction affecting interstate commerce which involved proceeds of unlawful activity, that is, the distribution of cocaine, knowing that the transaction was designed in whole and in part to conceal and disguise the nature and source of the proceeds, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is, United States currency, represented the proceeds of some form of unlawful activity; in violation of Title 18, United States Code, Section 1956(h).

## COUNT SEVEN

The Grand Jury further charges that in or about March, 2008, in the Eastern District of Tennessee and elsewhere, the defendants, MICHAEL KELLEY, RONALD GOODWIN and others known and unknown to the grand jury, did combine, conspire, confederate and agree to knowingly, intentionally and without authority violate Title 18, United States Code, Section 1512(c)(2), that is, to corruptly attempt to obstruct, influence and impede an official proceeding, to wit, a Federal grand jury and a proceeding before a judge and a court of the United States.

MANNER AND MEANS

On March 5, 2008, Hamilton County, Tennessee, Sheriff's Office deputies stopped the vehicle operated by the defendant, MICHAEL KELLEY. A search of the vehicle resulted in the seizure of approximately sixty nine thousand five hundred dollars ($69,500) in United States Currency. KELLEY intended to travel with this cash to meet with another person, known to the grand jury, in order to pay for controlled substances. The defendant, RONALD GOODWIN, an accountant who had prepared tax returns for KELLEY in the past, agreed to meet with KELLEY to discuss the money seizure. Thereafter, KELLEY contacted other persons soliciting personal checks each in the amount of $8000.00 payable to KELLEY intended by the defendants to falsely represent investments in KELLEY's business. KELLEY intended to use these checks to falsely justify a claim to be submitted to the Hamilton County Sheriff's Office for the cash that had been seized. KELLEY explained to at least one person, known to the grand jury, from whom he solicited a personal check, that GOODWIN could explain more clearly how the scheme involving the personal checks was to work. KELLEY assured persons solicited that their personal checks would never be cashed.

OVERT ACTS

In furtherance of the conspiracy and to achieve the objects thereof, the defendants and their co-conspirators, known and unknown to the grand jury, committed and caused to be committed the following overt acts in the Eastern District of Tennessee and elsewhere:

(1) The defendant, MICHAEL KELLEY, and the defendant, RONALD GOODWIN, and another known to the grand jury, met at Celebrity Tax Service in Chattanooga, Tennessee, to discuss the money seizure;

(2) subsequently, the defendant, MICHAEL KELLEY, solicited personal checks from several individuals falsely reflecting that the checks had been provided to KELLEY on dates preceding the money seizure;

(3) KELLEY received such checks from at least two persons, known to the grand jury;

all in violation of Title 18, United States Code, Section 371.

[Doc. 71 at 1-6].

## III.   Analysis

### A.   Standard

With regard to the sufficiency of an indictment, the Sixth Circuit has stated:

Under the Notice Clause of the Sixth Amendment, a criminal defendant has the right "to be informed of the nature and cause of the accusation" against him. *U.S. Const. amend VI*. In addition, the Indictment Clause of the Fifth Amendment requires that a defendant be charged with only those charges brought before the grand jury. *U.S. Const. amend. V*. The Supreme Court has instructed that an indictment satisfies these constitutional requirements "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); see *Russell v. United States*, 369 U.S. 749, 763-64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Sturman*, 951 F.2d 1466, 1478-79 (6th Cir.

1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2964, 119 L.Ed.2d 586 (1992).

*U.S. v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000). To be sufficient, an indictment must also satisfy the requirements of Fed. R. Crim. P. 7(c)(1). *United States v. Douglas*, 398 F.3d 407, 412-13 (6th Cir. 2005). Fed. R. Crim. P. 7(c)(1) states, in pertinent part, that:

> [t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

"To be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish *prima facie* the defendant's commission of that crime." *Id.* (quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992)). "Courts utilize a common sense construction in determining whether an indictment sufficiently informs a defendant of an offense." *Id.* (quoting *Allen v. United States,* 867 F.2d 969, 971 (6th Cir. 1989)).

To be sufficient an "indictment must: (1) 'set out all of the elements of the charge[d] offense and must give notice to the defendant of the charges he faces[,]' and (2) 'be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.'" *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir.), *cert. denied*, 128 S. Ct. 442 (2007) (quoting *Douglas*, 398 F.3d at 411). "An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and

unambiguously states all the elements of the offense." *Id.* (quoting *Superior Growers*, 982 F.2d at 176). The statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged.'" *Id.* (quoting *Hamling v. United States*, 418 U.S. at 117-18 (1974)). "An indictment must assert 'facts . . . which, if proved, would establish *prima facie* the defendant's commission of [the] crime.'" *United States v. Younes*, 194 F. App'x 302, 307 (6th Cir. 2006) (quoting *Superior Growers*, 982 F.2d at 177).

In determining the sufficiency of an indictment, it "must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." *Id.* (citing *United States v. Reed*, 77 F.3d 139, 140 n. 1 (6th Cir. 1996) (en banc)). When reviewing an indictment, the "court 'must ask whether the omission complained of deprives the defendant of one of the protections which the guaranty of a grand jury indictment was meant to ensure.'" *Superior Growers*, 982 F.2d at 176-77 (quoting *United States v. Sturman*, 951 F.2d 1466, 1479 (6th Cir. 1991)). "[A] defendant wishing to challenge an indictment valid on its face bears a heavy burden." *United States v. Woodman*, No. 98-4527, 2000 WL 1234328, * 5 (6th Cir. Aug. 21, 2000) (citing *United States v. Lamoureux*, 711 F.2d 745, 747 (6th Cir. 1983)).

In reviewing a pre-trial motion to dismiss an indictment, however, "[t]he federal courts may not assess the sufficiency of the evidence supporting an indictment obtained from an unbiased grand jury." *United States v. Williams*, No. CR 406-186, 2006 WL 3218704, * 1 (S.D.Ga. Nov. 3, 2006) (citing *United States v. Calandra*, 414 U.S. 338, 344-45 (1974); *Costello v. United States*, 350 U.S. 359, 362-63 (1956); *United States v. Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1997)). "The Federal Rules of Criminal Procedure permit a defendant to raise prior to trial only those defenses or objections which are 'capable of determination without the trial of the general issue.'" *Id.*

8

(quoting Fed. R. Crim. P. 12(b)). "It follows that a pretrial motion to dismiss the indictment cannot be based on a sufficiency of the evidence argument because such an argument raises factual questions embraced in the general issue." *Id.* (citing *Ayarza-Garcia*, 819 F.2d at 1048). Although at the pre-trial stage, the court "may review the legal sufficiency of the indictment, it may not . . . review the sufficiency of the proof that will be offered in support of the indictment's allegations or second-guess the grand jury's probable cause findings." *Id.* (citing *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam).

"Whether the indictment is based upon sufficient evidentiary support may not be determined through a pretrial motion, for there is no summary judgment procedure in the criminal law." *Id.* (citing *Critzer*, 951 F.2d at 307). "Should the government fail to meet its burden at trial of establishing each element of the crimes charged in the indictment, defendant can at that time move for a judgment of acquittal under Federal Rule of Criminal Procedure 29 prior to the submission of the case to the jury." *Id.*

### B.      Count Three/Count Six

Count Three charges Kelley, Lawrence and others with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h) [Doc. 71 at 2]. Count Six charges Kelley and Goodwin with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h) [*id.* at 4-5].

Lawrence challenges the sufficiency of Count Three, stating he:

> is unaware of any allegation that he participated in any way in drug dealing. The government has informed Lawrence's counsel that it intends to rely upon circumstantial evidence to supply the necessary element that Lawrence knew the money resulted from "unlawful activity."

> As far as Lawrence knows, the United States believes this to be an attempted money laundering case and that the "transaction" was to be the handing over of the money from the sheriff's employee to Kelly.

[Doc. 123 at 2]. Lawrence asserts there is no proof he knew the money was generated by an illegal activity, which is an essential element of money laundering [*id.* at 6-9], money laundering did not occur because the Sheriff's Office could not have legally returned the money to Kelley [*id.* at 9-16], and there is no proof the transaction, even if completed, affected interstate commerce [*id.* at 14]. Relying on the decision in *Cuellar v. United States*, __ U.S. __, 128 S. Ct. 1994 (2008), Lawrence asserts the return of the money to Kelley, even if it was completed, cannot constitute a "transaction" under 18 U.S.C. § 1956(a)(1) [*id.* at 3-6] because:

> The purpose of Kelly's efforts to obtain possession of the money was not to conceal its origins or source. Rather, these efforts were taken merely to obtain the money. Had Kelly obtained the proceeds and *then* created a transaction to conceal the origins of the money it might constitute the offence of money laundering. But merely asking for the return of money not in Kelly's custody or control cannot be money laundering . . . it cannot occur where, as here, the money is not possessed by the defendant or his co-conspirators.

[*Id.* at 4].

Kelley also relies on *Cuellar* and he asserts the allegations of Counts Two, Three and Six are subject to dismissal because they merely allege he was carrying and hiding the money, which does not violate the money laundering statute [Doc. 125 at 1-2].

In its response to Lawrence's motion to dismiss Count Three, the Government concedes the seized funds were in the custody of law enforcement, stating:

> Franklin has directed the court's attention to the allegations contained in Count Four of the Superseding Indictment. Accepting those basic facts, he argues, as does Lawrence, that it would be legally impossible to commit the crime of conspiring to commit money laundering as alleged in Count Three. The important fact for

defendants, to which the United States will stipulate, is that the approximate $69,5000 seized from Kelley was at the time of Franklin's and Lawrence's alleged participation in the conspiracy to commit money laundering in the custody of law enforcement.

[Doc. 151 at 1]. The Government asserts, however, that the conduct charged in Count Three fits the plain meaning of the applicable statute and is not subject to dismissal [*id.* at 3]. The Government also states:

As for the remaining claims made by defendants, the United States acknowledges its burden to prove that the money involved in the attempted transaction in this case was the proceeds of drug trafficking. Further, the United States must prove that the defendants knew the money came from some kind of illegal activity, that the attempted transaction was designed at least in part to disguise the true nature or source of the proceeds, and that the attempted financial transaction would have impacted commerce. . . . Count Three charges a conspiracy, not the completed substantive crime of concealment money laundering. . . . section 1956 contemplates *attempting* to conduct a financial transaction as well as the successful completion of a financial transaction.

[*Id.* at 6] (emphasis in original).

### 1. Financial Transaction

The money laundering statute at issue in Counts Three and Six, 18 U.S.C. § 1956(a)(1)(B)(i), states:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity–

(B) knowing that the transaction is designed in whole or in part–

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is

11

greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

With respect to the alleged conspiracy, 18 U.S.C. § 1956(h) states:

Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

The essential elements of the money laundering offenses charged in Counts Three and Six are: "(1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conduct or attempt to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds. *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000) (citing *United States v. Moss*, 9 F.3d 543, 551 (6th Cir. 1993)).

"The essential elements of the crime of conspiracy are that the alleged conspiracy existed, the defendant willfully became a member, and one of the conspirators knowingly committed at least one alleged overt act in furtherance of some object or purpose of the conspiracy." *United States v. Robertson*, 67 F. App'x 257, 269 (6th Cir. 2003) (quoting *United States v. Ross*, 190 F.3d 446, 450 (6th Cir. 1999)). Specifically, "[i]n order to convict a defendant of conspiracy to launder money under 18 U.S.C. § 1956, the government must prove: (1) that two or more persons conspired to commit the crime of money laundering, and (2) that the defendant knowingly and voluntarily joined the conspiracy." *United States v. Garcia*, 259 F. App'x 747, 750 (6th Cir. 2008) (citing *Sixth Circuit Pattern Jury Instructions*-3.01A; *Whitfield v. United States*, 543 U.S. 209, 212 (2005)).

Relevant statutory definitions include:

12

(1) the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7);

(2) the term "conducts" includes initiating, concluding, or participating in initiating, or concluding a transaction;

(3) the term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected;

(4) the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

18 U.S.C. § 1956(c).

Count Three charges Kelley, Franklin, and Lawrence with conspiracy to commit or attempt to commit money laundering – a financial transaction affecting interstate commerce – which was designed to conceal and disguise the seized money was proceeds of some form of unlawful activity, *i.e.*, the distribution of cocaine. The Manner and Means and Overt Acts subsections of Count Four give Kelley, Franklin and Lawrence notice of the facts which, if proven, constitute *prima facie* evidence of the crime of conspiracy to commit or attempt to commit money laundering in violation of 19 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h). Specifically, in Count Four the Government charges that Kelley, Lawrence and Franklin conspired to conceal and disguise the fact that the approximately

13

$69,500 in currency seized by the Hamilton County Sheriff's Office on or about March 5, 2008, was the proceeds of illegal activity by having Lawrence provide a false or fraudulent loan document indicating he had loaned the $69,500 to Kelley when in fact Lawrence had not loaned the $69,500 to Kelley, and that in furtherance of the conspiracy, Franklin had the false loan document notarized. The Overt Acts subsection states that Lawrence, who was then outside of the State of Tennessee, caused the fraudulent loan document to be sent via FedEx to Kelley in Chattanooga on or about March 6, 2008, that Kelley received the false document on March 7, 2008 and took it to Franklin that same day, and that Franklin caused another individual to notarize the false loan document to falsely indicate it had been signed on February 12, 2008. The Overt Acts subsection asserts that on or about March 7, 2008, Kelley presented the fraudulently notarized false loan document to an official of the Hamilton County Sheriff's Office as part of a claim for the seized money.

Count Six also charges Kelley and Goodwin with conspiracy to commit or attempt to commit money laundering – a financial transaction affecting interstate commerce – which was designed to conceal and disguise the fact that the proceeds were some form of unlawful activity, *i.e.*, the distribution of cocaine. The Manner and Means and Overt Acts subsections set forth in Count Seven give Kelley notice of the facts which, if proven, constitute *prima facie* evidence of the crime of conspiracy to commit or attempt to commit money laundering in violation of 19 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h). Specifically, in Count Seven the Government charges that Kelley and Goodwin conspired to conceal and disguise that the seized money was the proceeds of illegal activity by having Goodwin, who had prepared Kelley's tax returns in the past, contact other individuals and solicit personal checks in the amount of $8,000.00 payable to Kelley, with the intent by Kelley and Goodwin to falsely represent investments in Kelley's business in order to falsely justify a claim to be submitted to the Hamilton County Sheriff's Office for the seized currency. The

14

Overt Acts subsection asserts Kelley, Goodwin and another individual met to discuss the seizure of the currency and that Kelley subsequently solicited personal checks from several individuals to falsely reflect the checks had been provided to Kelley prior to the seizure of the money as part of the conspiracy to falsely justify a claim for the seized cash.

"The federal money laundering statute, 18 U.S.C. § 1956, prohibits specified transfers of money derived from unlawful activities. Subsection (a)(1) makes it unlawful to engage in certain financial transactions, while subsection (a)(2) criminalizes certain kinds of transportation." *Cuellar*, 128 S.Ct. at 1999. Although *Cuellar* involved a charge of attempting to *transport* illegal proceeds across the Mexican border in violation of the transportation provision of the money laundering statute, § 1956(a)(2)(B)(i), as relevant here, the Supreme Court stated:

> that taking steps to make funds appear legitimate is the common meaning of the term "money laundering." *See American Heritage Dictionary* 992 (4th ed. 2000) (hereinafter Am. Hert.) (defining "launder" as "[t]o disguise the source or nature of (illegal funds, for example) by channeling through an intermediate agent"); *Black's Law Dictionary* 1027 (8th ed. 2004) (hereinafter Black's) (defining "money-laundering" to mean "[t]he act of transferring illegally obtained money through legitimate people or accounts so that its original source cannot be traced"). But to the extent they are inconsistent, we must be guided by the words of the operative statutory provision, and not by the common meaning of the statute's title. See *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (declining to use a statute's title to limit the meaning of the text). Here, Congress used broad language that captures more than classic money laundering: In addition to concealing or disguising the nature or source of illegal funds, Congress also sought to reach transportation designed to conceal or disguise the location, ownership, or control of the funds. For example, a defendant who smuggles cash into Mexico with the intent of hiding it from authorities by burying it in the desert may have engaged in transportation designed to conceal the location of those funds, but his conduct would not necessarily have the effect of making the funds appear legitimate.

*Id.* at 2000.

15

"Money laundering, as conceived by § 1956(a)(1), prohibits a much broader range of conduct than what constitutes the popular concept of money laundering." *United States v. Watlington*, No. 06-4303, 2008 WL 2831999 (4th Cir. 2008) (citing *United States v. Bolden*, 325 F.3d 471, 486 (4th Cir. 2003)). In order to be convicted of money laundering "Section 1956(a)(1)(B)(i) requires that [a] defendant conduct a monetary transaction to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity." *United States v. LaBrunerie*, 914 F. Supp. 340, 346 (W.D. Mo. 1995).

The object of the conspiracy charged in Counts Three and Six was to conceal or attempt to conceal the nature of the proceeds, *i.e.*, to make the seized money appear legitimate. It is alleged that: (1) Kelley, Lawrence and Franklin (Count 3) committed acts in furtherance of that conspiracy when they procured and presented to the Hamilton County Sheriff's Office a fraudulently notarized false loan document indicating Lawrence had loaned the $69,500.00 to Kelley prior to its seizure, and (2) Kelley and Goodwin (Count 6) conspired and solicited personal checks which were intended to represent investments in Kelley's business as part of a conspiracy/scheme to falsely justify a claim for the seized money. I **CONCLUDE** Counts Three and Six of the Superseding Indictment set out the elements of the charged offenses, give notice to Kelley and Lawrence of the charges they face, and are sufficiently specific to enable the Defendants to plead double jeopardy in a subsequent proceeding if charged with the same crime based on the same facts.

In *United States v. Chartock*, No. 07-1973, 2008 WL 2569343, * 8 (3rd Cir. Jun. 30, 2008) the Third Circuit stated:

> The definition of ''transaction under the money laundering statute is 'very broad' and for that reason at least one Court of Appeals has stated that '[w]riting a check drawn on an account maintained [in a financial institution the activities of which affect interstate

> commerce] is ... a 'transaction.'" *United States v. Jackson*, 935 F.2d
> 832, 841 (7th Cir.1991). This Court agrees that the term "transaction"
> includes the writing of a check . . . .

Clearly, the soliciting of personal checks in the amount of $8,000.00 with the intent to conceal or disguise the nature of and/or support a claim for the seized money is a financial transaction under the statute.

With regard to the alleged submission of a false loan document, the issue is much closer and no case on point has been provided or located. In a case not cited by the parties, *United States v. Cavalier*, 17 F.3d 90 (5th Cir. 1994), some guidance is provided. In *Cavalier*, the defendant's nephew purchased a van which was insured by Allstate and financed by GMAC. When the nephew could not afford the monthly payments, the defendant took possession of the van, eventually shipped it to Honduras where he sold it, and then filed a false claim with Allstate reporting that the van had been stolen. *Id.* at 91. Based upon the false claim, Allstate paid GMAC in satisfaction of the lien on the vehicle. The defendant challenged his money laundering conviction asserting there was no financial transaction involved. *Id.* at 92. The Fifth Circuit rejected this argument stating the filing of the false theft claim resulted in Allstate's transfer of a check to GMAC and, thus, the defendant caused a financial transaction. *Id.*

Unlike in *Cavalier*, in this instance it appears the loan document did not result in the transfer of any funds. Instead, the Government appears to contend the submission of the fraudulently notarized false loan document to the Hamilton County Sheriff's Office constitutes a financial transaction because it could have triggered a process resulting in the return of the seized money. Thus, the Government contends Kelley, Lawrence, and others engaged in an attempt to conduct a financial transaction in violation of the money laundering statute.

In *United States v. Bolden*, the Fourth Circuit stated:

> the money laundering statute does not require the underlying criminal activity be completed prior to the money laundering transactions. *See United States v. Butler*, 211 F.3d 826, 829 (4th Cir. 2000) ("Funds are criminally derived if they are derived from an already completed offense, or a completed phase of an ongoing offense." (internal quotation omitted) (emphasis added)). Thus, the key inquiry is not whether the specified unlawful activity was completed prior to the alleged money laundering transaction. Instead, we must determine whether the specified unlawful activity generated proceeds prior to the money laundering, and whether the money laundering actually involved those criminally-derived proceeds.

325 F.3d 471, 487-88 (4th Cir. 2003). "By its text, § 1956 covers a broad array of behavior. Initiating, concluding or participating in the disposition of funds with the intent of concealing or disguising the nature of the funds or of promoting criminal activity may subject a person to prosecution if the funds are derived from any of a wide range of criminal activities." *United States. v. Bockius*, 228 F.3d 305, 310 (3rd Cir. 2000). Here, although the proceeds of the allegedly illegal activity, the seized money was in the hands of law enforcement at the time Franklin, Kelley, and Lawrence, as well as Kelley and Goodwin, are alleged to have conspired to conceal or disguise the nature of the illegal proceeds and/or recover them, "there is nothing in the statutory language [of 18 U.S.C. § 1956(a)(1)] to suggest that, in addition to being from a specified unlawful activity, the proceeds must never have been in the control of the government before they reached the defendant." *United States. v. Magluta*, 418 F.3d 1166, 1175 (11th Cir. 2005).

It appears the Government's claims against Lawrence in Count Three are somewhat novel in that similar charges are not addressed in any precedent cited by the parties or located by the undersigned. However, reading the Superseding Indictment as a whole, accepting the factual allegations as true, and construing the allegations in a practical sense with all the necessary implications, I **CONCLUDE** Lawrence has failed to meet his heavy burden with respect to his

18

challenge to the validity of Count Three on its face. As previously noted, whether the indictment is based upon sufficient evidentiary support may not be determined through a pretrial motion to dismiss. Obviously, if the Government fails to meet its burden at trial of establishing each element of the crimes charged under the money laundering statute, then Defendants can seek a judgment of acquittal under Fed. R. Crim. P. 29.

### 2. Impossibility

Lawrence asserts Count Three of the Superseding Indictment fails to charge the offense of money laundering because it was legally impossible for law enforcement to have returned the money to him pursuant to Tennessee law, Tenn. Code Ann. § 53-11-201 [Doc. 123]. Relying on the decision in *United States v. Peete*, 919 F.2d 1168, 1175-76 (6th Cir. 1990), Lawrence asserts the inability to return the seized currency constitutes a legal impossibility, which is a defense to an attempt to commit a crime [*id.* at 9-14]. Attached to Lawrence's motion is the notice of property seizure for $69,480 in currency which states:

> The . . . property . . . was seized in accordance with TCA 53-11-451, upon reasonable belief that said property was used or intended for use to transport, or in some manner facilitate, the sale or receipt of contraband goods . . . . The . . . property described above will be forfeited and subject to public sale or other lawful disposition after thirty (30) days from notice that a forfeiture warrant has been issued unless any claimant to the seized goods shall file with the Dept. of Safety, Legal Division . . . a claim in writing stating his interest in the seized goods and requesting a hearing pursuant to 40-33-201, et seq.

[Doc. 123-2].

Tenn. Code Ann. § 53-11-201 states in pertinent part:

> (a)(1)(A) In all cases of seizure of any narcotic drugs or marijuana or any vehicle, aircraft or boat or other property subject to forfeiture under this chapter, the officer or other person making the seizure

19

shall deliver a receipt to the person, if any, found in possession of such property or conveyance.

(B) The receipt shall state a general description of the seized property or conveyance, the reasons for the seizure, the procedure by which recovery of the property or conveyance may be sought, including the time period in which a claim for recovery must be presented, and the consequences of failing to file within the time period.
. . .
(b)(1) All such property seized and forfeited under this chapter shall be sold at public sale by the Commissioner of General Services when seized by an agency of the state or . . . if seized by a county or municipality, by the seizing agency of the county or municipality when the seized and forfeited property has been released by the Commissioner of Safety as now authorized by law.
. . .
(c)(1) Any person claiming any property seized as contraband goods may, within thirty (30) days after receipt of notification of seizure, file with the commissioner at Nashville a claim in writing, requesting a hearing and stating such person's interest in the articles seized.
. . .
(d)(1)(A) Within thirty (30) days from the day the claim is filed, the commissioner shall establish a hearing date and set the case on the docket.
. . .
(2) At each hearing, the state shall have the burden of proving by a preponderance of the evidence that the seized property was of a nature making its possession illegal or was used in a manner making it subject to forfeiture under the provisions of this chapter, and failure to carry the burden of proof shall operate as a bar to any forfeiture under this chapter.

(e)(1) If the ruling of the commissioner is favorable to the claimant, the commissioner shall deliver to the claimant the vehicle and any other property seized that is not contraband . . . .

(2) If the ruling of the commissioner is adverse to the claimant, the commissioner shall proceed to sell or dispose of the contraband goods in accordance with this section . . . .

As argued by Lawrence, it appears the Sheriff's Office could not return the seized currency to Kelley. This conclusion, however, does not require dismissal of the charges at this stage of the proceedings.

20

In *Peete*, the Sixth Circuit discussed the difference between factual and legal impossibility stating:

> "Under the traditional approach, legal impossibility but not factual impossibility is a defense to a charge of attempt. Legal impossibility is commonly defined as the case in which the defendant did everything he intended to do but yet had not committed the completed crime, while factual impossibility is the situation in which the defendant is unable to accomplish what he intends because of some facts unknown to him." *United States v. Goodpaster*, 769 F.2d 374, 380 n. 5 (6th Cir.) (Martin, J., dissenting) (citing W. LaFave & A. Scott, *Handbook on Criminal Law* § 60 at 438 (1972)), *cert. denied*, 474 U.S. 983, 106 S.Ct. 391, 88 L.Ed.2d 343 (1985). An example of a Hobbs Act legal impossibility would be a citizen's lawful campaign contribution to a United States Senate candidate though the citizen incorrectly believes the contribution is illegal. *See Bibby*, 752 F.2d at 1127 n. 1. A factual impossibility would arise where a public official induces a payment to achieve some result despite the fact that the official has no actual ability to achieve that result. *Id.* at 1127.

919 F.2d at 1176. Based upon the decision in *Peete* and assuming the Sheriff's Office could not return the seized currency, I **FIND** Lawrence's argument is based upon a factual impossibility not a legal impossibility.

### 3.      Remaining Issues

With regard to Lawrence's claims that: (1) he is unaware of any allegations he participated in drug dealing and that the government intends to rely on circumstantial evidence to supply the necessary element that Lawrence knew the money resulted from unlawful activity, (2) there is no proof Lawrence knew the money was generated by an illegal activity; and (3) there is no proof that even if completed the transaction affected interstate commerce, these allegations do not address the sufficiency of the Superseding Indictment, but rather the proof to be adduced at trial.

Thus, I **CONCLUDE** Counts Three and Six of the Superseding Indictment are sufficient and

should not be dismissed.

### C.    Count Two

Count Two charges Kelley and others with money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h) [Doc. 71 at 1-2]. As discussed above, Kelley relies on the decision in *Cuellar* asserting he is alleged to have been simply carrying and hiding the money, which does not violate the money laundering statute [Doc. 125 at 1-2].

The statute, 18 U.S.C. § 1956(a)(1)(A)(i), states:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity–
>
> > (A)(i) with the intent to promote the carrying on of specified unlawful activity;
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

"To prove a violation of the money laundering statute, 18 U.S.C. § 1956(a)(1)(A)(i), the Government must show the defendant: (1) conducted a financial transaction that involved the proceeds of an unlawful activity; (2) knew the property involved was the proceeds of an unlawful activity; and (3) intended to promote that unlawful activity." *United States v. McDonald*, Nos. 97-5339, 97-5556, 97-5338, 97-5187, 97-5196, 1999 WL 149658, * 8 (6th Cir. Mar. 1, 1999) (citing *United States v. Haun*, 90 F.3d 1096, 1100 (6th Cir. 1996)). As noted, "[T]o convict a defendant of conspiracy to launder money under 18 U.S.C. § 1956, the government must prove: (1) that two

22

or more persons conspired to commit the crime of money laundering, and (2) that the defendant knowingly and voluntarily joined the conspiracy." *United States v. Garcia*, 259 F. App'x 747, 750 (6th Cir. 2008).

Although Kelley asserts he was simply carrying and hiding the money at issue, which he asserts does not constitute a violation of 18 U.S.C. § 1956(a)(1)(A)(i) under the reasoning of *Cuellar* [Doc. 125 at 2], the Government responds that Kelley "premises his motion on his mistaken belief that the government intends only to prove that he was carrying and hiding money in his car." [Doc. 148 at 1]. Not only has the Government responded that it intends to prove more than that Kelley was carrying and hiding money in his car, Kelley's reliance on the decision in *Cuellar* is also misplaced. In *Cuellar*, the defendant was charged under the transportation section of the federal money laundering statute, 18 U.S.C. § 1956(a)(2)(B)(i), with attempting to transport illicit proceeds across the Mexican border "knowing that such transportation was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control" of the funds. *Cuellar*, 128 S.Ct. at 1999 (citing § 1956(a)(2)(B)(i)). Based upon the text of § 1956(a)(2)(B)(i), the Supreme Court concluded "that merely hiding funds during transportation is not sufficient to violate the statute even if substantial efforts have been expended to conceal the money." *Id.* at 2003. Rather, the Court conclude that § 1956(a)(2)(B)(i):

> requires proof that the transportation was "designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control" of the funds. § 1956(a)(2)(B)(i). Although this element does not require proof that the defendant attempted to create the appearance of legitimate wealth, neither can it be satisfied solely by evidence that a defendant concealed the funds during their transport.

*Id.* at 2006.

Kelley is not charged under § 1956(a)(2)(B)(i), but is instead charged in Count Two under

23

§ 1956(a)(1)(A)(i) with conducting or attempting to conduct financial transactions affecting interstate commerce with the intent to promote the carrying on of the unlawful activity. Thus, in Count Two (and also in its response to Kelley's motion to dismiss) the Government has alleged Kelley took actions beyond simply transporting the proceeds of illegal activity in his car. Count Two of the Superseding Indictment sets forth the elements of the offense of money laundering under 18 U.S.C. § 1956(a)(1)(A)(i) and permits Kelley to plead double jeopardy, if applicable.

Thus, I **CONCLUDE** Count Two of the Superseding Indictment should not be dismissed.

### D.     Count Four/Count Seven

Count Four charges Kelley, Franklin and Lawrence with conspiracy to knowingly and intentionally corruptly attempt to obstruct, influence, and impede an official proceeding, a federal grand jury and a proceeding before a judge and a court of the United States in violation of 18 U.S.C. § 1512(c)(2) [Doc. 71 at 3-4]. Only Kelley has challenged the sufficiency of Count Four [Doc. 126]. Count Seven likewise charges Kelley and Goodwin with conspiracy to knowingly and intentionally corruptly attempt to obstruct, influence, and impede an official proceeding a federal grand jury and a proceeding before a judge and a court of the United States in violation of 18 U.S.C. § 1512(c)(2) [Doc. 71 at 5-6].

With regard to Counts Four and Seven, Kelley asserts:

> the charges in these counts: "require scienter or knowledge of the existence of a 'Federal Grand jury or any proceeding before a judge and a court of the United States". The overt acts alleged do not, in any way, allege that the actions complained of were done with knowledge or intent to obstruct, influence or impede any official proceeding.

> There was no official trial proceeding pending at this time and no one knew that there were any Grand Jury Proceedings pending at the time these acts were done. The acts appear to be an attempt to regain

24

money stolen by the Hamilton County Sheriff's Department and were done in response to their (the Sheriff's Department's) directions. No where is there any proof of attempt to impede or influence an existing judicial or Grand Jury proceeding.

[Doc. 126 at 2].

The statute, 18 U.S.C. § 1512(c)(2), states:

> (c) Whoever corruptly–
> . . .
>
>> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

Kelley is charged in Counts Four and Seven under the third clause of § 1512(c)(2), which is:

> known as the "omnibus clause," which applies to one who "corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice[.]" *United States v. Bashaw*, 982 F.2d 168, 170 (6th Cir.1992). "'The omnibus clause is essentially a catch-all provision which generally prohibits conduct that interferes with the due administration of justice.' " *Id.* (quoting *United States v. Thomas*, 916 F.2d 647, 650 n. 3 (11th Cir.1990)). Being "far more general in scope than the earlier clauses of the statute," *United States v. Aguilar*, 515 U.S. 593, ----, 115 S.Ct. 2357, 2362, 132 L.Ed.2d 520 (1995), the omnibus clause does not require proof that the defendant actually influenced an officer of the court. Instead, to sustain a conviction under this clause, the government must prove that the defendant acted with an intent to influence judicial proceedings. *Id.* Moreover, the defendant's actions need not be successful; an "endeavor" suffices, so long as that endeavor has the natural and probable effect of interfering with the due administration of justice. *Id.* In other words, the defendant "must at least undertake action 'from which an obstruction of justice was a reasonably foreseeable result.' " *Bashaw*, 982 F.2d at 172 (citation omitted).

*United States v. Atkin*, 107 F.3d 1213, 1218 (6th Cir. 1997).

Section 1512 also provides, in relevant part, that:

> (f) For the purposes of this section–
>
>> (1) an official proceeding need not be pending or about to be instituted at the time of the offense; and
>>
>> (2) the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.
>
> (g) In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance--
>
>> (1) that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or
>>
>> (2) that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.

Thus, contrary to Kelley's assertion, based upon the plain language of the statute, there is no requirement in 18 U.S.C. § 1512 that a defendant must know of the existence of alleged official proceedings. "[T]he plain language of 18 U.S.C. § 1512(d) indicates that the government was not required to prove that grand jury proceedings were pending at the time of the offense. Nor was the government required to prove that [the defendant] knew that a federal grand jury and federal law enforcement officers were involved." *United States v. Scaife*, 749 F.2d 338, 348 (6th Cir. 1984).

Accordingly, I **CONCLUDE** that Counts Four and Seven of the Superseding Indictment should not be dismissed.

### E.      Kelley's *Pro Se* Motions

As previously noted, Kelley filed two *pro se* motions to dismiss [Doc. 174 & 176]. Kelley is represented by appointed counsel, attorney Charles P. Dupree. The local rules of this Court prohibit a party from appearing or acting *pro se* after an appearance by counsel for that party. E.D. TN. LR 83.4(c). In addition, Attorney Dupree has already filed two motions to dismiss on Kelley's behalf seeking dismissal of Counts Two, Three, Four, Six, and Seven of the Superseding Indictment [Doc. 125 & 126], which are addressed in the instant report and recommendation. Accordingly, I **CONCLUDE** the improperly filed *pro se* motions [Doc. 174 & 176] should be **DENIED**.

## IV.     Conclusion

For the reasons stated herein, I **RECOMMEND** that the Defendants' motions to dismiss, including the improperly filed *pro se* motions [Doc. 122, 125, 126, 174 & 176], be **DENIED**.[3]

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).