UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MICHAEL KELLEY                          )
                                        )
                                        )
v.                                      )    No.    1:13-cv-70/1:08-cr-51
                                        )           *Judge R. Leon Jordan*
UNITED STATES OF AMERICA                )

## MEMORANDUM

Federal prisoner Michael Kelley ("Kelley") filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 376).[1] The government opposes the motion (Criminal Court File No. 389).

The § 2255 motion, together with the files and record in this case, conclusively show Kelley is entitled to no relief under 28 U.S.C. § 2255. There are no material issues of fact in dispute and there is no need for an evidentiary hearing. After reviewing the record, the Court concludes that the motion will be **DENIED** and **DISMISSED WITH PREJUDICE** (Criminal Court File No. 376).

## I.    NON-DISPOSITIVE MOTIONS

Kelley has filed motions requesting discovery, to expand the record, funds for investigative services, to grant discovery motions, an extension of time in which to file a reply to the government's response to his § 2255 motion, and a motion for a status conference (Criminal Court File Nos. 378, 379, 380, 390, 392, & 394). The government opposes the discovery motions (Criminal Court File No. 388). To put Kelley's discovery motions into context, it is necessary to provide a brief synopsis of the history of Kelley's criminal case.

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

## A. Background

After the denial of his motion to suppress, on March 27, 2009, Petitioner pleaded guilty to Counts One and Two of the Superseding Indictment that charged conspiracy to distribute five kilograms or more of cocaine and conspiracy to commit money laundering, pursuant to a conditional plea agreement that reserved his appellate rights concerning the denial of his pretrial motions (Criminal Court File No. 287–Minute Entry of Plea; No. 288–Plea Agreement). On August 6, 2009, Kelley was sentenced to 188 months imprisonment on each count, to run concurrently (Criminal File No. 342–Sentencing Minute Entry, No. 344–Judgment). Kelley appealed his sentence and the denial of his pretrial motions to dismiss counts of the indictment against him and suppress evidence from a wire tap and searches of his car and home. The Sixth Circuit affirmed the judgment and the denial of the pretrial motions (Criminal Court File No. 369). The United States Supreme Court denied Kelley's petition for a writ of certiorari (Criminal Court File No. 375). Kelley timely filed this motion pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 376).

Kelley subsequently filed three motions seeking discovery, to expand the record, and funds for investigative services, and thereafter filed a motion requesting that the Court grant the discovery motion (Criminal Court File Nos. 378, 379,380, & 390). The Court reserved ruling on the first three motions and directed the government to respond to the motions. The government has filed its opposition to the discovery motions, thus the matter is ripe for review (Criminal Court File No. 388).

## B. Discovery Requests

### 1. *Applicable Law*

Discovery in 2255 cases is governed by Rule 6 of the Rules Governing 2255 Proceedings. Rule 6 provides that a 2255 movant must demonstrate good cause in order to obtain discovery.

2

Good cause requires specificity as to the sought information and does not entitle a movant to go on a fishing expedition through the government's files in hopes of finding some damaging evidence.

*See Bracy v. Gramley*, 520 U.S. 899 (1997). Rule 6(a) provides in pertinent part as follows:

> Leave of Court Required. A judge may, for *good cause*, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law.

(Emphasis added).

Good cause under Rule 6(a) exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief..." *Bracy v. Gramley*, 520 U.S. at 908-09. Habeas petitioners may not "use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. United States District Court,* 98 F.3d 1102, 1106 (9th Cir. 1996).

2.     *Motion to Seek Discovery*

In his discovery motion, Kelley requests the Court to order his trial counsel to produce Deputy Henry C. Ritter's March 5, 2008, traffic report, three photographs taken during the March 5, 2008 traffic stop, one of which he argues, for the first time, is not his vehicle; the DVD and Lt. Hinton's notes from his March 7, 2008, interview of Kelley; the order and seizure warrant for the $69,500.00; the March 5, 2008, dispatcher communication regarding Kelley's traffic stop; the orders pertaining to the sealing and unsealing of Kelley's and Demarcus Akins's ("Akins") cell phone numbers; Kelley's criminal record; and the "log in and out sheets" of the wiretap monitors on his and Akins's phones (Criminal Court File No. 378).

In addition, Kelley requests, from Assistant United States Attorney Winnie, a copy of the March 5, 2008, conversation between Deputy Ritter and Lt. Hinton and the 2007 and 2008 training

3

and testing records of Canine Yasco's reliability. Kelley requests such discovery to ensure him a fair investigation of the claims presented in his § 2255 motion. Kelley asserts the prosecution failed to disclose the above listed items to him and also states that if they disclosed the material to defense trial counsel, he did not notify Kelley. Kelley, who pleaded guilty, appears to be operating under the misconception that filing a § 2255 motion gives him a license to try his case and have unfettered access to all discovery that would have been presented had the matter gone to trial. Kelley is misguided. Kelley must demonstrate good cause for the Court to grant his discovery requests. Kelley's alleged reasons for the discovery requests, however, do not translate to good cause.

Kelley has failed to provide any information to constitute the "good cause" necessary to warrant discovery under Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Kelley has failed to allege, with sufficient specificity, any facts showing good cause for the court to grant his discovery request. Specifically, Kelley's claims about the police investigative reports, supplemental reports, and the officers testimony are convoluted and difficult to decipher. Although Kelley generally claims the discovery is necessary to assist him in proving his ineffective assistance of counsel and prosecutorial misconduct claims, his requests lack any specificity as what he expects to find. Rather, Kelley's requests merely are based on a general speculation that if he is permitted to go on this discovery hunting expedition something may come to light. Kelley's speculation as to what he might be able to discover is insufficient to enable the Court to find he has shown good cause to require discovery, as Kelley has failed to explain how the requested discovery may prove his claims.

For example, Kelley claims the picture of the vehicle with the scratches, the only photograph introduced as an exhibit during the suppression hearing, is not his vehicle. Kelley submits other pictures of a clean shiny Lexus, apparently in an effort to imply his vehicle was never scratched by

4

Yasco. Kelley's innuendos and speculation do not meet the specificity requirement to demonstrate good cause to warrant discovery. Moreover, Kelley's own intercepted statement telling a co-conspirator that Yasco "scratched up my GD car like a MFR man," contradicts this claim (Criminal Court File No. 393-1, at 28, Exhibit 4).

Kelley contends all of the requested discovery is necessary to help him establish the facts of the claims he has raised in his § 2255 motion (Criminal Court File No. 378). This general claim, however, is insufficient to enable the Court to find Kelley has shown good cause to require discovery. Kelley's motion lacks specificity and does not include what he hopes to find or how the documents will help him prosecute his § 2255 motion. Kelley's factually unsupported allegations are insufficiently specific and appear to be speculative and in the nature of a fishing expedition. In the absence of some specific valid reason or showing of justifiable need, the Court will not order the expenditure of public funds to provide Kelley with discovery.

In sum, there simply is nothing before the Court from which it can even infer that granting the requested discovery would lead to evidence enabling Kelley to demonstrate he is entitled to relief. Kelley has not met his burden of establishing good cause with respect to his discovery requests and further, the Court concludes the requested discovery is unnecessary to resolve the claims Kelley has raised in this § 2255 motion.

Accordingly, Kelley's motions seeking discovery and to grant discovery will be **DENIED** for lack of good cause (Criminal Court File Nos. 378, 390).

      3.     *Motion to Expand the Record*

In his second motion, Kelley requests permission to expand the record with interrogatories he has propounded for his criminal defense attorney, Deputy Ritter, and Deputy Thompson to answer; an article entitled <u>Chattanooga Weather Review: Spring 2008</u>; an affidavit from Tennessee

Bureau of Investigation Special Agent Rodd Watters that he apparently submitted in a civil case; an email between the prosecutor and law enforcement in his underlying federal criminal case; a partial transcript from an argument before the Supreme Court; and Kelley's self-serving affidavit of requests he made of trial counsel (Criminal Court File No. 379, 379-1 through 379-5). Kelley has neither established good cause nor shown the significance of any document with which he wishes to expand the record. Consequently, Kelley has failed to demonstrate the requested expansion is warranted.

Rule 7 of the Rules Governing Section 2255 Cases for the United States District Court provides that the judge may direct the parties to expand the record with additional materials including interrogatories propounded by the Court. The Court has not made such a request. Further, the Court concludes the proposed documents are not needed to resolve the claims Kelley has raised in his § 2255 motion. Accordingly, Kelley's motion to expand the record will be **DENIED** (Criminal Court File No. 379).

4. *Motion for Funds*

Kelley's motion requesting investigative services and funds for an expert witness likewise will be **DENIED** for failure to show good cause as he has offered nothing more than self-serving statements and speculation to support his request (Criminal Court File No. 380).

In sum, Kelley's motion requesting discovery, expansion of the record, and funds for an expert are nothing more than a fishing expedition in hopes of finding some damaging evidence. In the absence of some specific valid reason or credible showing of justifiable need, the Court will not order the expenditure of public funds to provide Kelley with discovery. Accordingly, Kelley's motions requesting discovery, expansion of the record, investigative funds, and to grant his discovery motions will be **DENIED** (Criminal Court File Nos. 378, 379, 380, 390).

5. *Motions to File Response and Schedule a Status Conference*

Kelley also has filed a motion requesting an extension of time in which to file a reply to the government's. response (Criminal Court File No. 392). However, Kelly has since filed a 96-page response with 34 pages of exhibits. The lengthy response and substantial exhibits are inappropriate and in direct violation of Local Rule 7.1(b), which provides briefs "shall not exceed 25 pages in length[,]" and LR 7.1(c), which provides that a reply brief shall directly reply to the points and authorities in the government's response and shall not be used to reargue the points and authorities included in his § 2255 motion or to present any new issues.

Nevertheless, because Kelley subsequently filed a reply and the Court reviewed the pleadings, the motion will be **DEEMED MOOT** (Criminal Court File No. 392).

Likewise, Kelley's motion requesting a status conference will be **DEEMED MOOT** since the Court has determined his § 2255 motion will be denied and dismissed for the reasons explained below (Criminal Court File No. 394).

## II.    § 2255 MOTION

In his § 2255 motion, Kelley specifically raises four grounds of ineffective assistance of counsel and one claim that his convictions and sentence violate the Fourth, Fifth, and Sixth Amendments. Kelley's supporting memorandum, however, seemingly raises numerous other issues. Kelley's pleadings are rambling and at times difficult to follow as they are disorganized and consists of numerous intertwined arguments with a substantial amount of insignificant information. After thoroughly reviewing Kelley's voluminous pleadings (more than 450 pages) with all of the obscure and confounding arguments, the Court concludes the government has adequately deciphered, framed, and arranged the issues in the most organized manner. Therefore, the Court will address the issues in accordance with the government's format.

7

## A.   Standard of Review

A sentence in a criminal case must be vacated if the Court makes a finding "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, . . . "  28 U.S.C. § 2255(a).  Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard:  (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001), *cert. denied*, 535 U.S. 967 (2002).

A motion filed pursuant to 28 U.S.C. § 2255 must consist of something more than legal conclusions unsupported by factual allegations.  *United States v. Johnson*, 940 F. Supp. 167, 170 (W.D. Tenn. 1996).  To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Clemmons v. Sowders*, 34 F.3d 352 (6th Cir. 1994).  In order to prevail on a § 2255 motion alleging non-constitutional error, "a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process."  *United States v. Goddard*, Slip Copy, 2013 WL 5410939, *5 (6th Cir. Sept. 26, 2013).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to determine after a review of the answer and the record whether an evidentiary hearing is required.  If no hearing is required, the district judge is to dispose of the case as justice dictates.  The Court finds it is not necessary to hold an evidentiary hearing.

8

## B.    Procedural Background

A superseding thirteen count indictment which included forfeiture allegations against Kelley and his co-defendants, was filed on June 24, 2008, charging Kelley in eight counts (Criminal Court File No. 71).  Count One charges a conspiracy beginning in November, 2007, and continuing until approximately March, 2008, between Kelley and his co-defendants, to distribute and possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine in violation of Title 21 U.S.C. §§ 846 and 841 (a) (1) and (b)(1)(A).  Count Two charges, beginning approximately November, 2007, and continuing to about March, 2008, Kelley and others conspired to conduct and attempt to conduct financial transactions affecting interstate commerce which involved proceeds of unlawful activity, that is, the distribution of cocaine, with the intent to promote the carrying on of the unlawful activity, and that while conducting and attempting to conduct such financial transactions knew the property involved in the financial transactions, i.e., United States currency, represented the proceeds of some form of unlawful activity in violation of Title 18 U.S.C. §§ 1956 (a)(1)(A)(I) and (h).  Counts Three, Four, Six, Seven, Ten, and Thirteen of the Superseding Indictment (charging Kelley with other crimes related to drugs, money laundering, and obstruction of justice) were dismissed on motion of the United States during Kelley's judgment proceedings (Criminal Court File No. 344–Judgment).

Following the denial of his pre-trial and suppression motions, Kelley entered into a conditional plea agreement, with the government, which allowed him to appeal the denial of his pretrial motions to dismiss counts of the indictment against him and suppress evidence from a wiretap and searches of his car and home (Criminal Court File No. 288–Plea Agreement).  The Court sentenced Kelley to 188 months of imprisonment as to each of Counts One and Two of the

superseding indictment, to run concurrently, and 5 years supervised release (Criminal Court File No. 344–Judgment).

On February 7, 2012, the Court of Appeals for the Sixth Circuit affirmed the denial of Kelley's pretrial motions and his sentence (Criminal Court File No. 369). *See United States v. Kelley,* 459 Fed. Appx. 527, 528-29 (6th Cir. 2012). The Supreme Court of the United States denied certiorari on October 2, 2012 (Criminal Court File No. 375). Kelley timely filed the instant § 2255 motion (Criminal Court File No. 376).

### C. Factual Background

The facts underlying Kelley's offense conduct are taken from the Court of Appeals for the Sixth Circuit opinion affirming the denial of his pretrial motions and sentences:

> Michael Kelley was part of a group of individuals, arrested in 2008, who were involved in the distribution of cocaine from Chattanooga, Tennessee to sell in Atlanta, Georgia. R.360 at 8–9. Police became aware of Kelley due to his calls to Demarcus Akins, on whom the police had a wiretap. Based on evidence gathered in the surveillance of Akins and others, Tennessee police requested and obtained a wiretap on Kelley's phones. R.157 at 3 (reproducing the affidavit in support of the wiretap).

> In monitoring the wiretap, police overheard a call in which Kelley communicated that he would be bringing $69,500 to Akins. After his arrest, Kelley conceded in his plea agreement that he was bringing the money to Akins to pay him for three kilograms of cocaine.

> Police stationed two officers, along with a drug-sniffing dog, on the road where Kelley was driving. They were told to pull Kelley over if they noticed a traffic violation. R.288 at 24, 29–30. Officer Ritter observed Kelley following a van too closely, in violation of Tennessee law, and initiated a traffic stop. During the stop, Ritter observed Kelley acting nervous. He asked if he could search the car, and Kelley refused. Officer Thompson arrived with the dog at this time and conducted a dog-sniff of the car. The dog alerted at the front of Kelley's vehicle.

> Based on his probable-cause belief that Kelley had drugs in his car, Ritter conducted a pat-down search of Kelley. Ritter felt a bulge in Kelley's pocket. When he asked what it was, Kelley stated that it was money to purchase supplies for his business. The pocket contained about $1,570. The officers then searched Kelley's car. In the

trunk they found a bag containing plastic bags that held $69,500. Kelley told the officers that the money was for purchasing business supplies. R.288 at 50–51. The officers seized the money from the trunk and the money from Kelley's pocket, and told him that if he could prove that the money was for legitimate purposes within three days, they would return it. Kelley was then released with a warning citation for following too closely.

Kelley later obtained a contract from a local businessman stating that he was lending Kelley $69,500 for improvements to Kelley's business. Kelley PSR at 8. The two men backdated the contract so that it would precede the traffic stop. A Chattanooga city councilman put Kelley in contact with a former co-worker who accepted payment from Kelley to put a backdated notary stamp on the contract. Kelley then gave the contract to police in order to have the $69,500 returned. The police did not return the money.

On March 18, 2008, Detective Andy Browne sought and obtained a search warrant for Kelley's house. R.129–2. Detective Browne based his affidavit for the warrant on the abovementioned facts as well as additional intercepted phone calls that suggested individuals were coming to Kelley's house to purchase or drop off drugs. During the search of Kelley's home, agents found and seized six ounces of cocaine, several thousand dollars, a high-volume money counter, and drug-trafficking paraphernalia.

*United States v. Kelley,* 459 Fed.Appx. at 529.

D.    **Analysis**

1.    *Claims Barred From Review*

In his initial filings, which consists of more than 320 pages, Kelley seemingly makes various arguments about the constitutionality of the underlying traffic stop, search of his home, wiretap of his phone, and sentencing calculations in addition to claiming the Sixth Circuit erred when it considered and rejected each of those claims (Criminal Court File No. 376).  Although Kelley's pleadings are very difficult to decipher, to the extent he is raising any claims previously considered and rejected by the Sixth Circuit on direct appeal, he is not entitled to any relief.  Thus, absent exceptional circumstances, or an intervening change in the case law, Kelley may not use his § 2255 motion to relitigate any issue previously resolved by the Sixth Circuit on direct review.  *See Oliver*

11

*v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996).

On direct appeal, the Sixth Circuit specifically rejected Kelley's arguments as explained below. The appellate court upheld the denial of Kelley's motion to dismiss Counts Two, Three, Four, Six, and Seven of the indictment concluding the counts were legally sufficient as they tracked "the language of the statute and set forth a set of facts to prove a violation of the statute[.]" *United States v. Kelley,* 459 Fed. Appx. at 530.

Likewise, the Sixth Circuit rejected Kelley's claims that the district court erred when it overruled his motions to suppress evidence that was found through a wiretap of his phone, during a search of his car, and during a search of his home, and when it denied him a *Franks* hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978) (The Fourth Amendment requires that a hearing be held at the defendant's request once he has made a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in the search warrant affidavit, if the allegedly false statement is necessary to the finding of probable cause). *United States v. Kelley,* 459 Fed. Appx. at 531-32. After explaining that the wiretap affidavit provided sufficient detail about alternative means of obtaining information and also identified the reasons why the wiretap was the best of those alternatives, the appellate court concluded "[t]he district court was not in error in determining that the wiretap affidavit was adequate and sufficiently demonstrated necessity." *Kelley,* 459 Fed. Appx. at 531. In addition, the Sixth Circuit determined Kelley's claim that the wiretap of his co-defendant's phone was illegal because his co-defendant lived in Georgia and a Tennessee court issued the warrant used to obtain a wiretap lacked merit because "[a] wiretap may be lawfully sought in either the location of a tapped phone or the original listening post." *United States v. Kelley,* 459 Fed. Appx. at 531 n. 2.

The appellate court also rejected Kelley's claim that the district court erred in overruling his motion to suppress the evidence obtained in the search of his car because, contrary to Kelley's claim that there was no legitimate basis for the traffic stop, there was credible evidence the officer witnessed Kelley violate a Tennessee traffic law, thus there was probable cause for the initial traffic stop. *Id.* The Sixth Circuit also upheld the district court's denial of Kelley's motion to suppress the evidence gathered in the search of his residence because "the totality of the circumstances described in Browne's affidavit clearly supports a finding of probable cause–this is not a 'bare-bones affidavit.'" *Id.* at 533.

Kelley's challenges to his sentence were also rejected on appeal. The appellate court rejected Kelley's objection to the two-level guideline increase for obstruction of justice because "Kelley provided law enforcement with fraudulent documents in order to have illegally obtained funds returned to him." The Sixth Circuit concluded his attempt to obstruct justice was unquestionable. *Id.*

Kelley's claim that the district court erred in determining the drug quantity was also rejected on direct review. The Sixth Circuit found the district court's determination of drug quantity was not unreasonable. *Id.* at 534. The Sixth Circuit explained that there were two permissible views of the evidence–the detective's view and co-conspirator Akins's view. The detective's view was based on co-conspirator's Lewis's statement that Kelley had made six to seven trips for him, transporting three to five kilograms of cocaine on each trip, and the wiretap transcripts identifying at least six trips where Kelley transported money and drugs between Chattanooga and Atlanta. Co-conspirator Akins's testified at Kelley's sentencing hearing that he estimated Kelley had transported fewer than fifteen kilograms of cocaine for him. The Sixth Circuit explained the district court was not in error in choosing to credit the testimony of the detective, and that the eighteen kilograms of cocaine was

13

a conservative estimate of drug quantity based on the credited testimony.    The Sixth Circuit deemed

waived Kelley's claim that the district court erred when it ordered forfeiture of the money the police

seized from Kelley's person during the search of the automobile as it was only raised in a perfunctory

manner. *Id.* at n. 3.  Finally, the appellate court rejected Kelley's claim that the district court failed

to consider all of the § 3553(a) factors in its sentencing determination, finding the record

demonstrates the district court carefully considered the § 3553(a) factors in determining his sentence.

As previously noted, a federal prisoner may not relitigate, in a § 2255 proceeding, claims that

were raised and considered on direct appeal, absent highly exceptional circumstances, such as an

intervening change in the law.  *DuPont v. United States,* 76 F.3d at 110-11.  Because Kelley has not

alleged, much less demonstrated, any exceptional circumstances that would permit him to relitigate

issues decided adversely to him on direct appeal, this category of claims are rejected.  *See Jones v.

United States,* 178 F.3d 790, 796 (6th Cir. 1999) ("It is . . . well settled that a § 2255 motion may not

be employed to relitigate an issue that was raised and considered on direct appeal absent highly

exceptional circumstances, such as an intervening change in the law.").  Accordingly, all claims

raised by Kelley that were previously litigated on direct appeal are barred from collateral review and

will be **DISMISSED**.

In addition "[i]t is well-established that a § 2255 motion is not a substitute for a direct

appeal." (Internal punctuation and citation omitted).  *Ray v. United States,* 721 F.3d 758, 761 (6th

Cir. 2013).  Therefore, claims that could have been raised on direct appeal, but were not, will not be

considered in a § 2255 proceeding absent a showing of cause and actual prejudice to excuse the

failure to previously raise the claim or that the movant is actually innocence of the crime.  *Bousley

v. United States,* 523 U.S. 614, 622 (1998) (internal citations omitted).

14

To the extent Kelley is attempting to raise claims that could have been litigated on direct appeal (for example, the Court lacked *in rem* jurisdiction over the seized money, the government introduced false photograph's of his vehicle, the magistrate judge's factual findings were in error and made without using the transcript, and issues pertaining to the drug dog) are procedurally defaulted. Kelley has not alleged any cause and prejudice or raised an actual innocence claim to excuse his procedural default. Accordingly, all issues that could have been raised on direct appeal are barred from collateral review and will be **DISMISSED**.

Although it has been a challenge to discern the actual claims Kelley is attempting to raise, it appears the government has generally identified the same claims as the Court has discerned from his voluminous pleadings. Therefore, the Court will address the claims in the same general sequence as the government for purposes of clarity and consistency.

2.    *Ineffective Assistance of Counsel Claims*

Kelley asserts his trial counsel rendered ineffective assistance pretrial, and during the plea, sentencing, and direct appeal proceedings. The Court will analyze Kelley's claims after discussing the law applicable to ineffective assistance of counsel claims.

a.    Applicable Law

The Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992).

Therefore, in order to demonstrate ineffective assistance of counsel, Kelley must show his attorney's representation fell below the standard of competence demanded of attorneys in criminal cases in addition to a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. at 687-88. To establish his attorney was not performing within the range of competence demanded of attorneys in criminal cases, a defendant must demonstrate the attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *McMann v. Richardson*, 397 U.S. 759, 771 (1970). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993). There is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d at 1579-80.

The Court cannot indulge in hindsight but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 690. Effective assistance of counsel is presumed, and the Court will not generally question matters involving strategy. *See United States v. Chambers*, 944 F.2d 1253, 1272 (6th Cir. 1991), *cert. denied*, 502 U.S. 1112 (1992), *superseded in part on other grounds by* USSG § 2D1.5 (a). The Supreme Court has instructed that "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689 (internal quotation marks and citation omitted). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland*, 466 U.S. at 690). In sum, the standard by which

16

a court reviews counsel's performance is highly deferential, and there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

The second prong of the *Strickland* test requires a showing that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In plea proceedings, the movant must show a reasonable probability that but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability he would have gone to trial, a movant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir., 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996), *superseded by statute on other grounds as stated in Dickerson v. Vaughn*, 90 F.3d 87 (3rd Cir. 1996); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994), *cert. denied*, 514 U.S. 1071 (1995); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986) (merely making a claim he would have pleaded differently and gone to trial is insufficient); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010).

17

The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697.

At the outset, the Court determines Kelley has failed to satisfy his burden as to the prejudice component of all of his ineffective assistance of counsel claims. In the instant case, Kelley is required to demonstrate a reasonable probability that, but for counsel's alleged errors, he would have pleaded not guilty and gone to trial. Neither Kelley's § 2255 motion or supporting brief include such a claim, much less demonstrate a reasonable probability that but for counsel's alleged shortcomings he would have pleaded not guilty and gone to trial. Rather, Kelley requests the Court to conduct an evidentiary hearing and vacate his judgment and dismiss the indictment.

In his reply to the government's response to his § 2255 motion, Kelley argues that the "prosecutor has not even alleged, much less established that based on the complete record that any reasonable probability does not exist, or that Mr. Kelley would not have refused to plead guilty and proceed to trial instead." (Criminal Court File No. 393, at 27). Thus it appears Kelley misunderstands that it is his burden to prove prejudice in relation to his ineffective assistance of counsel claims. Although Kelley was proceeding to trial but changed his mind at the last minute, that fact, in and of itself, does establish a reasonable probability that Kelley would have proceeded

18

to trial but for his counsel's alleged errors. In sum, Kelley has failed to present sufficient credible evidence that but for counsel's alleged errors he would have pleaded not guilty and gone to trial.

Accordingly, Kelley has not met his burden under *Lockhart v. Hill*, which requires a defendant to demonstrate a reasonable probability he would have gone to trial. In addition, for the reasons explained below, Kelley has also failed to demonstrate counsel performed deficiently.

### b. Court's Jurisdiction

Kelley claims trial counsel ineffectively failed to file a motion to dismiss the money laundering charge for lack of *in rem* jurisdiction over the approximately $69,500.00 confiscated during the March 5, 2008, traffic stop by Deputy Ritter. Kelley seemingly claims because the confiscated money was turned over to the State, he could not be charged with a federal money laundering crime. Apparently Kelley is under the impression that, because the money was confiscated and in possession of the State, the District Court lacked jurisdiction to adjudicate his federal money laundering charge. Kelley cites no legal authority for his argument.

The criminal statute Kelley violated and to which he pleaded guilty,18 U.S.C. § 1956(h), requires proof that two or more persons conspired to commit the crime of money laundering, i.e., to conduct and attempt to conduct financial transactions affecting interstate commerce which involved proceeds of unlawful activity, and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions, that is, United States currency, represented the proceeds of some form of unlawful activity. The $69,500.00 was confiscated from Kelley in Hamilton County, Tennessee.

There is no requirement that the money be in the actual possession of the federal government in order to prosecute Kelley for this federal offense. Notably, the venue provisions in § 1956 provides the action may be brought in any district in which the financial or monetary transaction is

19

conducted. 18 U.S.C. § 1956(i). Kelley conducted the transaction in Hamilton County, Chattanooga, Tennessee. Specifically, Article III, section 1 of the United States Constitution provides, "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish[,]" Under 18 U.S.C. § 3231, district courts have original jurisdiction over all criminal matters arising under the law of the United States. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Because the United States Constitution expressly gives Congress power to create "inferior Courts[,]" and the United States District Court for the Eastern District of Tennessee at Chattanooga is such a court, the Court had jurisdiction over Kelley's criminal case.

Because the Court properly exercised jurisdiction over Kelley's criminal case, any motion by counsel requesting to dismiss Count Two of the indictment for lack of *in rem* jurisdiction over the $69,500.00 would have been frivolous. Therefore, counsel's failure to file such a motion cannot be deemed deficient performance. *See Chapman v. United States,* 74 Fed. Appx. 590, 593 (6th Cir. 2003), *available at* 2003 WL 22114015 (Counsel "is not required by the Constitution to raise frivolous defenses or arguments to avoid a charge of ineffective representation"). Accordingly, Kelley's claim that counsel was ineffective for failing to file a motion to dismiss his money laundering count on the basis of lack of *in rem* jurisdiction will be **DISMISSED**.

Seemingly, Kelley also claims counsel was ineffective for failing to argue the Court lacked *in rem* jurisdiction over the money seized and therefore lacked authority over its forfeiture. Notably, however, the record does not reflect there were any federal forfeiture proceedings in this case. Granted, both the superseding indictment and Kelley's plea agreement, contain forfeiture allegations (Criminal Court File No. 71, at 8-10–superseding indictment; No. 288, at 8, ¶12–plea agreement),

but during Kelley's rearraignment hearing, the Assistant United States Attorney and Kelley's

attorney explained the government was not pursuing any forfeiture claims:

> MR. WINNIE: Judge, there is a forfeiture provision in the plea agreement, that provision is that Mr. Kelley no longer contests the seizure of money on March 5th, 2008. And I don't believe that there are any actions pending by the federal government against any other property of Mr. Kelley. *In fact, the federal government is not pursuing that money, it's just that he's agreeing not to contest that seizure any longer in whatever form* [sic].

> MR. DUPREE: Your honor, our discussions with Mr. Winnie on the forfeiture provisions, we are understanding that the government is making no forfeiture claims to Mr. Kelley's business, to his home, or to his automobile, and this is the only claim they're making forfeiture charges to or for him to abandon any claim to the $69,500 that was obtained as a result of the search in this case and it's the basis of the money laundering. That's my understanding of the government's position. Is that right, Mr. Winnie?

> MR. WINNIE: Well, the government is not pursuing ***any*** forfeiture against Mr. Kelley.

(Criminal Court File No. 335, at 21-22) (emphasis added).

Regardless of the fact that the State may have physically possessed the money, federal statute

provides that "irrespective of any provision of State law" property may be subject to forfeiture when

it is the direct or indirect proceeds of the crime of conviction. 21 U.S.C. § 853(a)(1). In addition,

the money was subject to forfeiture to the United States pursuant to 21 U.S.C. § 881, which provides:

(a)     Subject property

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . .

(6)     All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange

for a controlled substance or listed chemical in violation of this sub-
chapter, all proceeds traceable to such an exchange, and all moneys,
negotiable instruments, and securities used or intended to be used to
facilitate any violation of this subchapter.

21 U.S.C. § 881 (a) (6). Kelley's plea agreement establishes the nexus between the money and the

drug and money laundering convictions:[2]

> On [numerous] occasions between January and March, 2008, the defendant
> transported money provided him by Marcus Lewis to Atlanta, Georgia, where he
> would then provide the money to Demarcus Akins. The money that Lewis provided
> to the defendant was in fact proceeds derived from the sale of cocaine and crack
> cocaine by Lewis and others. . . .
>
>
> On March 5, 2008, the defendant was intercepted discussing the transportation of
> approximately $69,[5]00 with Demarcus Akins. After surveillance determined that
> the defendant had met with Lewis and was on his way to Atlanta, uniformed officers
> stopped his vehicle. Approximately $69,500 was seized from the defendant['s car]
> during the stop and search of the car [and $ 3,000 from his person]. The defendant
> did in fact intend to bring that money to Demarcus Akins in exchange for 3 kilograms
> of cocaine. . .

(Criminal Court File No. 288, at 4).

In any event, Kelley's plea agreement and his own words during his plea colloquy clearly

demonstrate he agreed to abandon any claim to the approximately $69,500.00 that was confiscated

as a result of the search and that was the basis of the money laundering conviction (Criminal Court

File No. 335, at 21-22). Even if counsel had made such an argument the Court would have denied

relief as the claim lacks merit, is unsupported by any legal authority, and contradicted by the

stipulated facts in the plea agreement. In addition, Kelley is bound by his plea agreement "not to

---

[2]     There are handwritten additions and changes sprinkle throughout the plea
agreement which the Court has enclosed in brackets. Even though those changes are not initialed
by the parties, the Court has quoted the handwritten portions of the plea agreement, rather than
the scratched out typewritten portions.

object to any civil or criminal forfeiture brought against these properties." (Criminal Court File No. 8, at 8, ¶12).

Accordingly, because Kelley is unable to establish counsel performed deficiently or that he suffered any prejudice due to counsel's failure to argue the Court lacked *in rem* jurisdiction over the $69,500.00 in relation to his agreement not to contest its seizure, relief on this claim will be **DENIED**

### c.    Failure to Conduct More Investigation

Kelley claims counsel was ineffective for failing to conduct a more thorough and comprehensive investigation of his case. Kelley argues counsel should have compared the government's photographs of his car to his actual vehicle. In addition, Kelley complains that counsel failed to obtain Deputy Ritter's cell phone records, "dash board camera hard drive," and surveillance recordings from pole cameras mounted in the vicinity of the traffic stop. Kelley, however, fails to explain what information would have been revealed and its effect on his criminal proceedings (Criminal Court File No. 376, at 26-27).

Although Kelley asserts a bald, factually unsupported claim that the picture of the black Lexus with scratches on it introduced at the suppression hearing was not his vehicle, he fails to provide any evidence or information from which the Court could even infer that his self-serving statement lends itself to any possibility of credibility (Criminal Court File No. 376, at 27). Although Kelley submits Exhibit L and purports the pictures are of his vehicle without any scratches, there is no credible evidence that the pictures were taken immediately after his arrest and accurately depict the condition of his vehicle immediately after the stop and canine alert (Criminal Court File No. 376-4, at 16-17). In addition, the new pictures submitted by Kelley are not taken at the same angle or distance from the car as the picture showing the scratches (Criminal Court File No. 376-4, at 18,

23

Exhibit M).

Curiously, in his affidavit, Kelley fails to identify the photographer, the date the photographs were taken, and aver the photographs were taken immediately after his arrest and accurately depict the condition of his vehicle after Yasco's alert. As the Court understands Kelley's argument, he is claiming Yasco did not alert on his vehicle by scratching it. Kelley's own submissions in response to the government's Answer, however, establish that such a claim would be false. Particularly, in the transcription of a phone conversation Kelley had with one of his cohorts, Kelley complained to his co-conspirator "that dog scratched up my GD car like a MFR man[.]" (Criminal Court File No. 393-1, at 28, Exhibit 4). Kelley's taped statement to his co-conspirator belies his claim that the picture of the scratched Lexus is not his.

Kelley does not indicate what Deputy Ritter's cell phone records, dash board camera hard drive, or surveillance recordings from pole cameras would have revealed or how those items may have altered the outcome of his case. Rather, Kelley simply complains that counsel did obtain those items.

Kelley's factually unsupported claims of what counsel failed to do, without any evidence of what a more thorough investigation would have revealed, is insufficient to demonstrate by a preponderance of the evidence that counsel performed deficiently. Moreover, even assuming for the sake of discussion that counsel performed deficiently in this regard, Kelley has failed to establish a reasonable probability that had counsel conducted a more extensive investigation the outcome of Kelley's case would have been different.

The Court infers Kelley makes these claims based on the possibility they may have revealed how close he was traveling to the van before he was pulled over. Whether there is any such evidence to support such a claim is a matter of pure speculation. The Sixth Circuit has instructed that when

24

"one is left with pure speculation on whether the outcome of [the criminal proceeding] could have been any different, [there is] an insufficient basis for a successful claim of prejudice." *Baze v. Parker,* 371, F.3d 310, 322 (6th Cir. 2004), *cert. denied,* 544 U.S. 931 (2005). Pure speculation does not equate to a reasonable probability that the outcome of Kelley's criminal proceedings would have been different.

Accordingly, the Court's confidence in the outcome of Kelley's criminal proceeding is not undermined, thus, relief pursuant to § 2255 will be **DENIED** on his claims regarding counsel's alleged failure to adequately investigate his case.

d.     Counsel's Advice to Not Testify

Kelley complains that counsel advised him not to testify at the suppression hearing without giving him a reason for the advice (Criminal Court File No. 376, ¶ 24b).[3] Although Kelley proffered his own affidavit, it does not contain any supporting facts regarding the content of their conversation or how his testifying could have "disprove[d] Ritter's testimony." (Criminal Court File No. 376, ¶ 24b). Specifically, Kelley does not explain what credible facts he could have presented to disprove Officer Ritter's testimony or any of the other evidence presented at the hearing.

A criminal defendant has a "fundamental constitutional right" to testify on his own behalf at trial or to refuse to do so. *Rock v. Arkansas,* 483 U.S. 44, 53 & n. 10 (1987); *see also Brooks v. Tennessee,* 406 U.S. 605, 612 (1972) ("Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right"). Aside from the fact Kelley's complaint is not based on a denial of his right to testify at trial, under Sixth Circuit precedent, Kelley's claim that

---

[3]     Kelley's § 2255 motion is 68 pages long and contains numbered paragraphs. Because two paragraphs are numbered "24," consistent with the government's Answer, those paragraphs will be referenced at "24a" and "24b," respectively.

counsel advised him not to testify without providing his reasons, does not state a claim of ineffective assistance of counsel. *See Walker v. United States,* 238 F.3d 426 (6th Cir. 2000), *available at* 2000 WL 1871681.

> The right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant. Unaccompanied by coercion, however, legal advice concerning exercise of the right to testify infringes no right.

*Id.* at *2 (citations omitted). Here, Kelley does not claim counsel coerced him, rather he simply complains that counsel advised him not to testify without explaining his reasons.

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*United States v. Webber,* 208 F.3d 545, 551 (6th Cir. 2000) (internal punctuation and citations omitted).

Kelley's complaint that counsel advised him not to testify without explaining his reasons is insufficient to demonstrate deficient performance. Kelley does not claim counsel forbid him from testifying or even that he advised counsel he wanted to testify. Although counsel was required to offer Kelley reasonable counseling, there is no evidence before the Court that counsel's advice was not reasonable. In addition, although counsel advised Kelley not to testify, he did not actually prevent him from doing so. Notably, at the conclusion of the government's proof at the suppression hearing, counsel first consulted with Kelley before notifying the Court that they had no evidence to introduce (Criminal Court File No. 360, at 96). That was the time for Kelley to notify the Court if he wished to testify.

26

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. Applying this principle to the instant claim, in order to demonstrate counsel ineffectively advised him not to testify, Kelley must demonstrate counsel's conduct so undermined the proper functioning of the adversarial process that the suppression hearing cannot be relied on as having produced a just result. Kelley's factually unsupported claim that counsel advised him not to testify without providing any reasons for his advice fails to even permit speculation that the suppression hearing did not produce a just result. Not only has Kelley failed to show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed Kelley by the Sixth Amendment, *id.* at 687, he has failed to show he suffered any prejudice as a result of counsel's advice not to testify at the suppression hearing.

Counsel's advice to Kelley not to testify at the suppression hearing was undoubtedly a strategic decision which Kelley has not demonstrated was "so ill chosen that it permeates the entire [proceeding] with obvious unfairness." *United States v. Cavitt*, 550 F.3d 430, 440 (5thCir. 2008) ("[I]f a tactical decision is conscious and informed it cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness" (internal punctuation and citation omitted)). Consequently, Kelley has failed to demonstrate "counsel was not a reasonably competent attorney and the advice was not within the range of competence demanded of attorneys in criminal cases." *Strickland,* 466 U.S. at 687 (internal punctuation and citation omitted).

On the facts presented, counsel's performance was "within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Nevertheless, even assuming counsel's advice was deficient, Kelley's failure to proffer any credible evidence of his proposed testimony to

27

demonstrate prejudice is fatal to his claim. Accordingly, because the record does not reflect counsel's advise was unreasonable, the claim will be **DISMISSED**.

e.     Counsel's Failure to Object to Alleged False Photo

Similar to his previous claim that counsel failed to investigate and compare his vehicle with the government's photographs, Kelley complains that counsel failed to object to the admission of the photograph into evidence on the grounds it was not a picture of his vehicle. Specifically, Kelley contends that during the suppression hearing counsel ineffectively failed to object to the validity of the photograph that was alleged to have been of his vehicle. Kelley contends he advised counsel, on October 7, 2008, during the suppression hearing that the photograph the government admitted into evidence showing the dog scratch marks on his SC 430 Lexus was not his vehicle (Criminal Court File No. 376, ¶ 25).

As previously explained in claim (c), i.e., counsel failed to adequately investigate his case, Kelley has submitted no credible evidence that the photograph introduced by the government during his suppression hearing was not of his vehicle. Moreover, Kelley's incredulous claim that his vehicle was not scratched and the picture does not depict his vehicle is belied by his own intercepted taped statement wherein he states the "dog scratched up my GD car like a MFR man[.]" (Criminal Court File No. 393-1, at 28, Exhibit 4).

Accordingly, because Kelley has not demonstrated counsel's decision not to object to the introduction of the photograph was unreasonable, this ineffective assistance of counsel claim will be **DISMISSED**.

f.     Counsel's Failure to Object to Magistrate's Factual Findings

Kelley attacks counsel for failing to obtain a copy of the transcript of the suppression hearing and failing to object to the magistrate judge's factual findings in her Report and Recommendation

28

(Criminal Court File No. 376, ¶¶  5, 25-26, 28-36, 59, and 62).   Kelley asserts "the magistrate judge's findings are irreconcilable with [the actual] testimony." (Criminal Court File No. 376, ¶ 28). A review of the suppression hearing transcript and the magistrate judge's report and recommendation reveals only minor inconsequential discrepancies with the transcript.

For example, in her report and recommendation, the magistrate judge stated: "The target, who carried a bag into Defendant's residence was the person identified by law enforcement as responsible for bringing cash to the Defendant for his trip to Atlanta to purchase cocaine.  A short time later, Hixson observed Defendant drive away from his residence with a different bag." (Criminal Court File No. 207, at 2).  The suppression hearing transcript, however, reflects Officer Hixson testified that on March 5, 2008, he observed  Marcus Lewis exit a vehicle carrying a shopping bag into Kelley's residence at approximately 2:55; exit Kelley's house at 3:48; and return to Kelley's residence at 4:22 carrying another bag (Criminal Court File No. 360, at 18-19).  There was no testimony by Officer Hixson that he observed Kelley ("Defendant") leave with a different bag (Criminal Court File No. 207, at 23).  This discrepancy, however, is inconsequential because it makes no difference what Kelley carried out of his residence as he could have carried all the money out on his person.[4]  In addition, officers were monitoring Kelley's phone calls at the time and were conducting surveillance on Kelley's residence based on previous calls that Lewis was going to Kelley's house to drop cash off to Kelley.  After the 4:22 drop-off, officers intercepted a call between Kelley and Demarcus Akins wherein Kelley told Akins that he was preparing to leave to deliver $69,500.00 to Akins (Criminal Court File No. 60, at 19).

_____

[4]        Officer Hixson's report indicates Kelley parked his black Lexus in the garage (Criminal Court File No. 376-4, at 9-10).

Kelley raises nothing more than minor inconsequential discrepancies. Aside from the fact that this Court previously found the magistrate judge's findings of fact fully supported by the video of the stop and the exhibits presented at the suppression hearing, the Court also finds the magistrate judge's findings of fact are supported by the transcript of the suppression hearing. The magistrate judge's factual findings are consistent with the evidence and the testimony at the suppression hearing. To the extent there is competing interpretations of the evidence, the magistrate judge's findings are fully supported. The magistrate presided over the suppression hearing and therefore, heard the testimony and made first-hand observations about the credibility of each witness. "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment." *United States v. Brown,* 2007 WL 1345463, at *1 (E.D. Tenn. May 7, 2007).

To the extent Kelley faults counsel for failing to object to the magistrate judge's factual findings, there is no evidence such omission was constitutionally deficient performance and prejudiced Kelley. Accordingly, because Kelley presents no substantial valid challenge to the factual findings of the magistrate judge, his claim that counsel was ineffective for failing to object to the magistrate's factual findings will be **DISMISSED**.

   g.  <u>Failure to Obtain Narcotic Detection Dog's Records and an Expert</u>

Kelley also faults counsel for failing to dispute the magistrate judge's finding that Officer Thompson's canine, i.e. Yasco, was certified to detect drugs, obtain Yasco's training records, and present an expert witness regarding the reliability of drug dog alerts (Criminal Court File No. 376, ¶ 55, 59). Kelley, however, has failed to indicate any reason why counsel should have requested these materials. Kelley presents no credible evidence that Yasco was not reliable or properly trained.

30

Officer Mike Thompson with the Hamilton County Sheriff's Office K-9 division and his canine, Yasco, were asked to conduct an exterior sniff of Kelley's vehicle and during the sniff Yasco alerted on Kelley's vehicle (Criminal Court File No. 360, at 88-89). Officer Thompson testified he obtained certification with Yasco before he was permitted to become a handler on the streets. Officer Thompson and Yasco attended a three week school in March, 2007, where they were taught tracking, narcotic detection, and apprehension. They graduated and Officer Thompson "was certified to work the dog and [] was also certified with canine Yasco and K-9 Yasco was recertified with the narcotics." (Criminal Court File No. 360, at 90-91). Officer Thompson described the narcotics training they received at the school in Elkhart, Indiana. In addition, Officer Thompson has been to interdiction schools, drug schools, and he and Yasco go through recertification every year. The officer trains with Yasco eight hours a week to keep his skills up on the odors of narcotics. Officer Thompson testified that both he and Yasco were current on their certification in March, 2008 (Criminal Court File No. 360, at 92-93).

On cross-examination, Kelley's attorney inquired about Yasco's false positive ratio, and Officer Thompson testified Yasco is 100 percent reliable in training. When counsel asked him where the cocaine was that Yasco hit on, Officer Thompson responded that the money tested positive for cocaine (Criminal Court File No. 360, at 94-95). Counsel also had the officer clarify that the school was Rudy Drexler's School for Dogs, in Elkhart, Indiana.

Aside from the fact that counsel may have been aware of Yasco's training and reliability since the canine has been involved in other criminal cases, even assuming counsel performed deficiently in failing to obtain Yasco's records and an expert, which the Court does not find, Kelley has provided no evidence whatsoever, that he was prejudice by counsel's alleged shortcomings. Weighing the evidence of Yasco's training and reliability against the fact there is no competing

31

evidence presented by Kelley, this speculative § 2255 claim is without merit and will be **DISMISSED**.

> h.  Akins's Wiretap

Kelley complains that counsel failed to follow his request to file a motion to suppress the wire intercepts from Akins's cellular telephone on the basis Criminal Court Judge Steelman of Hamilton County, Tennessee lacked jurisdiction to authorize the wire intercepts of Akins's phones since he lived in Atlanta, Georgia (Criminal Court File No. 376, at ¶¶ 90-97).

On appeal, the Sixth Circuit addressed this issue:

> Kelley also argued that the wiretap on his co-defendant Akins's phone was illegal, and, as the "fruit" of that wiretap, the wiretap on Kelley's phone was illegal, as well. Kelley's basis for thinking the wiretap on Akins's phone was illegal is that the warrant used to obtain a wiretap on his phone came from a Tennessee court, but Akins lived in Georgia. Because this argument was not raised below, we review it only for plain error, but it would fail under any standard. A wiretap may be lawfully sought in either the location of a tapped phone or the original listening post. *See United States v. Johnson,* ___ Fed. Appx. ___, 2010 WL 3736881, at *2-3 (6th Cir. 2010).

*United States v. Kelley,* 459 Fed. Appx. at 531 n. 2.

Counsel cannot be judged ineffective for failing to litigate a claim the Sixth Circuit has already determine is meritless. Accordingly, Kelley's claim that counsel failed to request to file a motion to suppress the wire intercepts from Akins's phone will be **DISMISSED**.

> i.  Sealed Title III Intercept Recordings

Kelley complains that although counsel assured him the court had unsealed the wiretap interceptions used during his suppression hearing, counsel never produced the court's unsealing order. Kelley claims the sealed Title III wiretap interceptions were never ordered to be unsealed, and therefore, the government could not reference the existence of the wiretap or the conversations intercepted, without first having those recordings unsealed (Criminal Court File No. 376, ¶¶ 76-87).

32

Title 18 U.S.C. § 2517 authorizes the disclosure and use of intercepted recordings in the following situations:

> (2)     Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

> (3)     Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United Stats or of any State or political subdivision thereof.

18 U.S.C. § 2517 (2) (3). Therefore, the use of the wiretap evidence was expressly authorized under federal law.

In addition, as the magistrate judge has previously concluded, the wiretap orders state: "Duplicate recordings may be made at any time after being SEALED without further order from this Court for use or disclosure for investigatory purposes and disclosure in a criminal prosecution as permitted by law" (Criminal Court File No. 117-2, at 55). Consequently, counsel was not ineffective for not objecting to the use of the intercepted communications on the basis the court never unsealed the intercepted communications.

Accordingly, Kelley's claim that counsel was ineffective because he failed to object to the government's unauthorized use of the sealed intercepted recordings will be **DISMISSED**.


j.     Inadequate Advice to Plead Guilty

Kelley claims counsel advised him to accept the plea agreement without adequately explaining the plea agreement and advising him of all the consequences (Criminal Court File No.

33

376, ¶¶39-40). Kelley complains that he was not allowed to read the plea agreement; counsel failed to advise him that he would be sentenced based on more than 5 kilograms of cocaine; his sentence could be enhanced based on obstruction of justice even though that count of the indictment was dismissed; the Court retained discretion over certain sentencing determinations (i.e., drug quantity attributed to him and an obstruction-of-justice enhancement); and counsel assured him he would face only the 120-month statutory mandatory minimum sentence if the Court accepted his plea agreement. Kelley's allegations are contradicted by his sworn statements during his plea colloquy and the terms of the plea agreement he signed.

"Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.), *cert. denied*, 508 U.S. 943 (1993), *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir.), *cert. denied*, 426 U.S. 953 (1976)). This Court scrupulously followed the Rule 11 procedure and Kelley is bound by his sworn statements made in response to the Court's inquiry under Rule 11. *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993).

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Although Kelley initially asserts he was not allowed to read the plea agreement, later in his own pleading, he explains counsel "came to his holding cell and read him the plea agreement, he did not allow Kelley to actually read it himself because he was hand cuffed[.]" (Criminal Court File No.

376, ¶ 40). In addition, under oath Kelley acknowledged that counsel explained the terms of the plea agreement to him (Criminal Court File No. 335, at 9).

Likewise, Kelley's claims that he was not advised he could be held accountable to more than 5 kilograms of cocaine, and counsel advised him "he would only be looking at the 120 months statutory maximum[,]" are contradicted by his sworn testimony during his rearraignment hearing and his plea agreement  (Criminal Court File No. 376, ¶41–§ 2255 motion; No. 335, at 3-4; 13-26–rearraignment transcript, No. 288, at 5–plea agreement).  Kelley was advised both in his plea agreement and during his rearraignment proceeding that his guilty plea to Count One of the superseding indictment carried a possible sentence of no less than ten years up to life imprisonment. Kelley was further advised his sentence on Count Two would be no more than twenty years (Criminal Court File No. 288, at 1, ¶ 1;No. 335, at 20-21).

During his hearing, the magistrate judge advised Kelley the district court would consider his federal sentencing guidelines once a probation report was produced and that the judge could depart from the guidelines and sentence him above or below the guidelines, to which Kelley acknowledged he understood (Criminal Court File No. 335, at 22-23).  The magistrate judge advised Kelley the government has not made any agreement to recommend a particular sentence, and that his sentence would be determined by the U.S. District Judge.  Kelley acknowledge that he understood (Criminal Court File No. 335, at 24).  Finally, paragraph eleven of Kelley's plea agreement provides:

> No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case.  Any estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court.  The defendant understands that the sentence in this case will be determined by the Court after it receives the pre-sentence report from the United States Probation Office and any information presented by the parties.  The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and

35

guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

(Criminal Court File No. 288, at 7-8). Thus, Kelley's plea agreement specifies that his sentence will be based on more than just the conduct to which he pleaded guilty as it specifically notified him that his sentence would be based on the entire scope of his criminal conduct, criminal history, and other factors.

Kelley's claim that counsel failed to advise him he would be sentenced based on more than 5 kilograms of cocaine plea agreement it also belied by the record. Kelley acknowledges counsel read him the plea agreement which specifies "[t]he defendant expressly admits he participated in a conspiracy with Demarcus Akins and Marcus Lewis to distribute *5 kilograms or more of cocaine*[.]" (Criminal Court File No. 288, at 5) (emphasis added). In addition, during his rearraignment the government stated its case against Kelley which included the elements of the offense to which Kelley agreed to plead (Criminal Court File No. 335, at 13-20). The government stated the conspiracy involved "five kilograms or more of cocaine[,]" and that Kelley expressly admits to participating in the conspiracy to distribute "five kilograms or more of cocaine." (Criminal Court File No. 335, at 13-14, 18-19). Kelley, who was under oath, agreed with the government's summary (Criminal Court File No. 335, at 20). Consequently, Kelley's statements acknowledging he was guilty of participating in a conspiracy to distribute five kilograms or more of cocaine demonstrates he knowingly entered his guilty plea in this respect and "constitute a formidable barrier" in this collateral proceeding. *Blackledge v. Allision,* 431 U.S. at 74.

Nevertheless, even assuming counsel performed deficiently in this regard, Kelley suffered no prejudice because, in addition to being notified he was pleading guilty to participating in a conspiracy to distribute five kilograms or more of cocaine, he was clearly notified by the magistrate

36

judge of all of the consequences of his plea during his rearraignment. Therefore, he is unable to demonstrate he suffered any prejudice.

In sum, Kelley was correctly informed of the consequences of his guilty plea and his sentencing exposure during his rearraignment. The record clearly demonstrates Kelley's plea was knowing and voluntary, and his claim that counsel ineffectively failed to adequately explain the consequences of the plea agreement is without merit. Accordingly, Kelley is **DENIED** relief on this claim.

k.    <u>Ineffective Assistance on Direct Appeal</u>

Petitioner speculates that had counsel raised different claims on appeal or made additional arguments, the outcome of his appeal would have been different. Petitioner faults counsel for, among other things, challenging "the affidavit in support of the search and seizure warrant for Mr. Kelley's alleged residence rather than arguing that the warrant failed to establish probable cause or that the state judge's warrant failed to expressly incorporate or attach Detective Andy Browne's affidavit in support of the warrant for its probable cause determination; nor did counsel raise the Fourth Amendment issue regarding the search warrant's particularity requirement." (Criminal Court File No. 376, ¶ 98). In addition, Kelley claims counsel should have discussed *United States v. Ferguson,* 385 Fed. Appx. 518 (6th Cir. 2010) (government failed to produce any evidence linking cash to drug trafficking activities), in relation to the forfeiture of the money seized during the traffic stop, and should have challenged the magistrate judge's finding that the narcotics detection dog was certified to detect drugs (Criminal Court File No. 376, ¶¶ 54, 62).

The *Strickland* test applies to appellate counsel and a *Strickland* claim may be brought based on counsel's failure to raise a particular claim. However, the Supreme Court has explained "that appellate counsel who files a merits brief need not (and should not) raise every non frivolous claim,

37

but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins,* 528 U.S. 259, 288 (2000). Although the decision whether to appeal rests with a criminal defendant, the Supreme Court has explained that "the process of winnowing out weaker claims on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Burger v. Kemp,* 483 U.S. 776, 784 (1987) (internal punctuation and citation omitted). To overcome the presumption of effective assistance of counsel, a defendant will have to show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Smith v. Robbins,* 528 U.S. at 288. This, Kelley has not done.

Kelley's claim regarding the search warrant fails as both the magistrate judge and this Court held the search in question fully complied with the Fourth Amendment. Moreover, the Sixth Circuit specifically concluded: "In this case, the totality of the circumstances described in Browne's affidavit clearly supports a finding of probable cause–this is not a 'bare-bones affidavit.'" (Criminal Court File No. 369, at 11). Consequently, Kelley cannot demonstrate he suffered any prejudice as a result of counsel not raising the Fourth Amendment issues he now suggests are stronger than the issues raised by counsel.

As to counsel's failure to appeal the magistrate judge's finding that the dog used by the police was certified to detect drugs, even absent the official training records, the record before the Court clearly establishes Yasco and his handler were trained, and Yasco alerted to the odor in Kelley's car (Criminal Court File No. 360, at 88-96). Consequently, Kelley has not demonstrated that decision was unreasonable or that he suffered any prejudice as a result of counsel's decision.

As to Kelley's assertion that counsel should have discussed the case of *United States v. Ferguson* in relation to the forfeiture of the money seized during the traffic stop, he is misguided.

Unlike the facts in *Ferguson,* here, a nexus was proven between Kelley's drug-trafficking activities and the money confiscated during cash seized from Kelley, as the intercepted conversations and the facts specifically admitted by Kelley indicated the cash seized was related to the drug-trafficking conspiracy. Nevertheless, even if counsel was deficient for failing to make such an argument, Kelley has provided no credible proof that the money was not related to his drug-trafficking activities, and therefore, he has failed to demonstrate he suffered any prejudice as the result of counsel's alleged deficient performance.

In sum, neither the circumstances nor the applicable legal standards suggests appellate counsel's failure to raise the issues Kelley asserts he should have raised on appeal rebut the presumption that counsel's conduct on appeal falls within the range of reasonable assistance. Accordingly, because Kelley has not demonstrated appellate counsel was ineffective, relief on this claim will be **DENIED**.

l. <u>Failing to File a Petitioner for Writ of Certiorari</u>

To the extent Kelley faults counsel for not filing a petition for a writ of *certiorari*, he is unable to establish he suffered any prejudice because he had no constitutional right to counsel at that time and Kelley, himself, filed the petition.

Since a criminal defendant has no constitutional right to counsel in connection with a petition for *certiorari* to the Supreme Court, "he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely." *Wainwright v. Torna,* 455 U.S. 586, 587-88 (1982); *see also Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). Kelley "had no constitutional right to counsel at the petition-for-*certiorari* stage," thus, "he cannot state a claim for ineffective assistance of counsel due to his counsel's failure to petition for certiorari." *Nichols v. United States,* 563 F.3d

39

240, 251 (6th Cir. 2009) ("where there is no constitutional right to counsel, there can be no deprivation of effective assistance").

Even if counsel performed deficiently in failing to file a motion for rehearing *en banc* and for *certiorari,* Kelley cannot demonstrate he suffered any prejudice since he file, *pro se,* a motion for rehearing *en banc* and a petition for a writ of *certiorari*.  Accordingly, to the extent Kelley claims counsel was ineffective for failing to file a motion for rehearing *en banc* and a petitioner for a writ of *certiorari*, relief is **DENIED**.

In sum, it is clear from the pleadings, files, and record that Kelley is not entitled to relief on any of his ineffective assistance of counsel claims as he has clearly failed to demonstrate either deficiency of counsel's performance or prejudice to him.

3.      *Prosecutorial Misconduct Claims*

Kelley claims the prosecution, in violation of *Brady v. Maryland,* 373 U.S. 83 (1963),  failed to disclose Deputy Ritter's March 5, 2008, cell phone  conversation with Lt. Hinton regarding the traffic stop (Criminal Court File No. 376, ¶ 66).  In addition, Kelley claims the prosecutor knowingly elicited false testimony by introducing a photograph of a black Lexus and allowing Deputy Ritter to falsely testify it was Kelley's vehicle (Criminal Court File No. 376, ¶¶25, 28).

Under *Brady v. Maryland,* 373 U.S. at 87, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment."  There are three components to a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [Government], either wilful or inadvertently; and prejudice must have ensued."  *Strickler v. Greene,* 527 U.S. 263, 281-81 (1999).  To establish a due process violation based on the government's knowing use of false testimony a movant must prove

40

the false statements were material and the prosecuting officials knew at the time the testimony was presented that it was perjured.  *See United States v. Bagley,* 473 U.S. 667, 679-680 (1985)

The United States asserts these claims are procedurally defaulted and should be summarily rejected.  The Court agrees. Aside from the fact that Kelley has failed to establish the three components of a *Brady* violation, the Court need not address the claim because it should have been raised on appeal, but was not.  *Bousley v. United States,* 523 U.S. 614 (1998).  Likewise, Kelley's claim that the prosecutor presented false testimony is not cognizable in a § 2255 motion because this claim should have been addressed in a direct appeal.

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent[.]'"  *Id.* at 622 (citations omitted).  Kelley has offered no explanation for the default of his prosecutorial misconduct claims in an attempt to demonstrate cause or prejudice, nor does he claim he is actually innocent.  Consequently, Kelley's claims of prosecutorial misconduct are procedurally defaulted and not subject to review in this proceeding.

To the extent Kelley may be claiming counsel was ineffective for failing to appeal the prosecutorial misconduct claims as cause to excuse his procedural default, he has still failed to establish the necessary prejudice as he has not demonstrated how the cell phone conversation may have assisted him, that the photograph actually introduced during the suppression hearing was not his vehicle, or that the prosecution presented a false photograph knowing it to be false.  Accordingly, Kelley's prosecutorial misconduct claims will be **DISMISSED** as procedurally barred.

### III.    CONCLUSION

In sum, Kelley's claims raised on direct appeal are barred from relitigation here; his claims of ineffective assistance of counsel lack merit; his claims of prosecutorial misconduct are procedurally defaulted, as are any other claims he has raised in his 68 page § 2255 motion and 261 pages of attachments that could have been raised on direct appeal (Criminal Court File No. 376).

Accordingly, for the foregoing reasons, the Court concludes Kelley's convictions and sentences were not in violation of the Constitution or laws of the United States and his motion pursuant to § 2255 will be **DENIED** and **DISMISSED WITH PREJUDICE** (Criminal Court File No. 376).  In addition, Kelley's motions requesting discovery, to expand the record, investigative services and funds, and to grant his discovery motions are **DENIED** (Criminal Court File Nos. 378, 379, 380, 390), and his motions requesting an extension of time in which to file a reply and a status conference are **DEEMED MOOT** (Criminal Court File Nos. 392, 394).

An appropriate judgment order will enter.


**IT IS SO ORDERED**.

ENTER:


_____ s/ Leon Jordan _____
United States District Judge

42