UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | ) Nos. 1:08-cr-51-RLJ-SKL-1<br>) |
| MICHAEL KELLEY | )<br>)<br>) |

## REPORT AND RECOMMENDATION

Before the Court are several motions filed by Defendant Michael Kelley ("Defendant" or "Kelley"), including: (1) a motion for the return of personal property [Doc. 422],[1] (2) a motion for discovery in connection with his motion for return of property [Doc. 427], (3) a motion for a default judgment on his motion for the return of property [Doc. 430], and (4) a motion for leave to submit interrogatories upon the United States of America (the "Government") and two individual officers allegedly involved in the removal of his property [Doc. 436]. The Government filed an incorrectly titled response to Defendant's motion for return of property [Doc. 424], Defendant filed a reply [Doc. 426], and the Government timely filed a supplemental response [Doc. 428] as ordered by the Court [Doc. 425] with an attached report of investigation [Doc. 428-1] and "affidavit" of Deputy U.S. Marshal Jason Ladd on March 29, 2017 [Doc. 428-2]. The Government also filed a response in opposition to Defendant's motion for discovery and motion for default [Doc. 433] and Defendant filed two additional replies [Docs. 434 & 435].

---

[1] The original motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b) [See Doc. 429]. The other motions addressed herein are all related to the referred motion.

## I. BACKGROUND

To address the pending motions, it is not necessary to include a lengthy discussion of Defendant's extensive underlying criminal proceedings. Suffice it to say,

> Michael Kelley was part of a group of individuals, arrested in 2008, who were involved in the distribution of cocaine from Chattanooga, Tennessee to sell in Atlanta, Georgia. Police became aware of Kelley due to his calls to Demarcus Akins, on whom the police had a wiretap. Based on evidence gathered in the surveillance of Akins and others, Tennessee police requested and obtained a wiretap on Kelley's phones.
>
> In monitoring the wiretap, police overheard a call in which Kelley communicated that he would be bringing $69,500 to Akins. After his arrest, Kelley conceded in his plea agreement that he was bringing the money to Akins to pay him for three kilograms of cocaine.
>
> Police stationed two officers, along with a drug-sniffing dog, on the road where Kelley was driving. They were told to pull Kelley over if they noticed a traffic violation. Officer Ritter observed Kelley following a van too closely, in violation of Tennessee law, and initiated a traffic stop. During the stop, Ritter observed Kelley acting nervous. He asked if he could search the car, and Kelley refused. Officer Thompson arrived with the dog at this time and conducted a dog-sniff of the car. The dog alerted at the front of Kelley's vehicle.
>
> Based on his probable-cause belief that Kelley had drugs in his car, Ritter conducted a pat-down search of Kelley. Ritter felt a bulge in Kelley's pocket. When he asked what it was, Kelley stated that it was money to purchase supplies for his business. The pocket contained about $1,570. The officers then searched Kelley's car. In the trunk they found a bag containing plastic bags that held $69,500. Kelley told the officers that the money was for purchasing business supplies. The officers seized the money from the trunk and the money from Kelley's pocket, and told him that if he could prove that the money was for legitimate purposes within three days, they would return it. Kelley was then released with a warning citation for following too closely.
>
> Kelley later obtained a contract from a local businessman stating that he was lending Kelley $69,500 for improvements to Kelley's business. The two men backdated the contract so that it would precede the traffic stop. A Chattanooga city councilman put Kelley in contact with a former co-worker who accepted payment from

2

Kelley to put a backdated notary stamp on the contract. Kelley then gave the contract to police in order to have the $69,500 returned. The police did not return the money.

On March 18, 2008, Detective Andy Browne sought and obtained a search warrant for Kelley's house. Detective Browne based his affidavit for the warrant on the abovementioned facts as well as additional intercepted phone calls that suggested individuals were coming to Kelley's house to purchase or drop off drugs. During the search of Kelley's home, agents found and seized six ounces of cocaine, several thousand dollars, a high-volume money counter, and drug-trafficking paraphernalia.

On May 13, 2008, a grand jury charged Kelley and six other individuals with conspiracy to distribute and of possession with the intent to distribute more than five kilograms of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One). Kelley was also charged with three counts of money laundering, in *530 violation of 18 U.S.C. § 1956 (Counts Two, Three, and Six); two counts of conspiracy to obstruct a grand-jury investigation, in violation of 18 U.S.C. § 1512(c)(2) (Counts Four and Seven); and one count of distribution and of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Nine).

Before trial, Kelley moved to dismiss Counts Two, Three, Four, Six, and Seven of the indictment. He also moved to suppress evidence obtained through the wiretap of his phones, the search of his car, and the search of his home. After conducting a hearing related to the car search, a magistrate judge recommended denial of all of Kelley's suppression motions. The district court adopted the magistrate judge's reports and recommendations, denying the motions.

Kelley pleaded guilty to Counts One and Two of the indictment, pursuant to a plea agreement. Counts Three, Four, Six, and Seven were later dismissed.

At Kelley's sentencing, the judge added a two-level enhancement for obstruction of justice, based on Kelley's use of the backdated contracts to seek reimbursement of the $69,500. Kelley was sentenced to 188 months of imprisonment for Count One and Count Two of the indictment, to be served concurrently, and five years of supervised release.

*United States v. Kelley*, 459 F. App'x 527, 529-30 (6th Cir. 2012) (summary of underlying criminal proceedings on direct appeal).

As pertinent to the pending motions, after the return of the indictment Kelley was arrested on May 27, 2008 when the car he was a passenger in was stopped [Doc. 428-1, Page ID # 2697-98]. The Report of Investigation prepared on June 2, 2008, states: "After the traffic stop was conducted Kelley was located in the passenger side of the vehicle. Kelley was then placed into handcuffs and all of his personal belongings [were] placed back into the vehicle with his permission." [*Id*. at 2697 (All caps of name removed)]. Kelley was then transported to the jail. It is this personal property in Kelley's possession at the time of his pat-down and arrest that is the subject of the pending motions.[2]

The arrest and the handling of the property are also addressed in the unnotarized affidavit of the arresting Deputy United States Marshall, Jason Ladd, which was filed in response to the pending motions and states:

4. On May 27, 2008, I received apprehension responsibility on fugitive Michael Kelley from the Drug Enforcement Administration ("DEA".)

5. On May 31, 2008, a traffic stop was conducted by the Chattanooga Police Department, Alcohol Tobacco & Firearms, Task Force Officer Freeman, and the Affiant on Michael Kelley while he was a passenger in a car. The individual driving the car was Kathleen Muckle a known associate of Michael Kelley.

6. After the traffic stop was conducted Michael Kelley's personal property was placed back in the vehicle at the permission of Michael Kelley.

7. It is common practice to return all personal property that is not being seized to someone present if the person being arrested gives consent.

8. Michael Kelley gave consent for his personal property to be placed back in the vehicle with Kathleen Muckle.

---

[2] The missing property allegedly consists of an expensive diamond ring and bracelet, an expensive watch, an expensive necklace with a cross emblem, and $900.00 cash [Doc. 422 at Page ID # 2669 and 434 at Page ID # 2712].

4

[Doc. 428-2, Page ID # 2699].

In his reply, Kelley disputes that he gave consent for his property to be given to Ms. Muckle. He also appears to question when the property was returned to her, because she was placed in a patrol car for some period of time. He does not, however, submit any evidence indicating the property is still in the possession of the Government.

## II. STANDARDS

Rule 41(g) provides criminal defendants with a means to seek the return of property seized by federal agents. Fed.R.Crim.P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."). Rule 41(g) does not say what happens when the property in dispute has been lost or destroyed. *United States v. Droganes*, 728 F.3d 580, 589 (6th Cir. 2013) (citing *Ordonez v. United States,* 680 F.3d 1135, 1137-38 (9th Cir. 2012)). Likewise, the Rule does not expressly authorize a defendant to sue the government for compensation when property is lost or destroyed. *Id.* at 589 (quoting *Ordonez*, 680 F.3d at 1138, 1140 (holding that "Rule 41(g) contains no express and unequivocal waiver of the government's sovereign immunity.")). For this reason, the Sixth Circuit has held, as "at least nine circuits" have already held, "that sovereign immunity bars an award of money damages against the government on a Rule 41(g) motion where the property cannot be returned." *Id.* at 589 (quoting *Ordonez*, 680 F.3d at 1138 & n. 2 (collecting cases)).

## III. ANALYSIS

The Government's supplemental response to Kelley's motion establishes that the property taken from Defendant at the time of his arrest is no longer in the custody of the Government to the extent it ever was. While there is a factual dispute regarding whether Kelley gave permission to Deputy Ladd to give Kelley's property to Ms. Muckle, Kelley has presented

5

no credible argument or evidence that the property was not provided to Ms. Muckle on the day of Kelley's arrest. Instead, Kelley now argues that since the Government is claiming that it gave the property to Ms. Muckle (without his consent), "the court should order [the Government] to get it back or replace it." [Doc. 434, at Page ID # 2714].

Because the Court cannot order the Government to return property that it no longer possesses, *Pitts v. United States*, No. CR 10-703, 2017 WL 74987, at *6 (E.D. Pa. Jan. 6, 2017), it is recommended that the Court deny Kelley's motion for the return of his personal property upon the proper filing of a sworn affidavit or declaration of Deputy Ladd.[3] To the extent Kelley seeks to hold the Government responsible for returning his property to Ms. Muckle allegedly without Kelley's permission, an award of money damages is not a proper remedy on a Rule 41(g) motion. *Pitts*, 2017 WL 74987, at *4 (collecting cases and holding "[t]he majority of courts, however, have declined to interpret Rule 41(g) as a waiver of sovereign immunity that would permit a claimant to receive damages in lieu of tangible property—including money—that the government has lost or destroyed."). *See also Droganes,* 728 F.3d at 589-90.

As Kelley, in effect, acknowledges that the Government no longer has possession of his personal property by asking the Court to order [the Government] to get it back or replace it,"

---

[3] As pointed out by Kelley (and ignored by the Government), Deputy Ladd's affidavit [Doc. 428-2] is neither notarized nor states it is made under penalty of perjury. An unsworn declaration may be substituted for a properly sworn affidavit "if the statement contained in the declaration is made under penalty of perjury, certified as true and correct, dated, and signed." *Kavanaugh v. Lexington Fayette Urban Cty. Gov't*, 638 F. App'x 446, 453 n.4 (6th Cir. 2015) (quoting *Pollock v. Pollock,* 154 F.3d 601, 611 n. 20 (6th Cir. 1998) (citing 28 U.S.C. § 1746)). *See also Walton v. Wheatly Co.*, No. 92-3379, 1993 WL 43934, at *2 (6th Cir. Feb. 19, 1993) (noting that an unnotarized affidavit that was not acknowledged under "penalty of perjury" was insufficient to support a motion to proceed *in forma pauperis*). Accordingly, the Government is **ORDERED** to supplement the record with either a *notarized* sworn affidavit or a proper declaration that complies with the requirements of 28 U.S.C. § 1746 of Deputy Ladd within **seven days**.

[Doc. 434, at Page ID # 2714], it is not necessary to conduct a hearing or order discovery.[4] *See Pitts,* 2017 WL 74987, at *3 ("An evidentiary hearing is not required to resolve every factual dispute, and sometimes 'affidavits or documentary evidence, such as chain of custody records, may be sufficient to support a fact finder's determination.'") (quoting *United States v. Albinson*, 356 F.3d 278, 282 (3rd Cir. 2004); *United States v. Cardona-Sandoval*, 518 F.3d 13, 16 (1st Cir. 2008) ("Affidavits or documentary evidence, such as chain of custody records, may suffice to support the district court's determination in a given case."); *United States v. Crooker*, No. CR 04-30034-PBS, 2015 WL 13234478, at *2 (D. Mass. Dec. 18, 2015).

## IV. CONCLUSION

For the reasons stated above, the Government is **ORDERED** to supplement the record with a sworn affidavit or declaration under penalty of perjury **within seven days** as noted in

---

[4] Defendant's motion for discovery [Doc. 427] was apparently filed before the Government served its supplemental response to the motion for return of property [Doc. 424] with a correct "Register Number" identifying Defendant at the Bureau of Prison's facility where he is incarcerated. The supplemental response provided Defendant the information he sought in his motion for discovery. Kelley's reply makes many accusations about the Government's failure to include a proper Register Number and its allegedly "aggressive egotistical" response, and Kelley seeks a default based on the Government's alleged lack of good faith, but he identifies no additional discovery necessary to resolve the motion for return of property given the Government's proof that it does not have the property [Doc. 435, at Page ID # 2719]. The motion seeking leave to file interrogatories includes Kelley's proposed interrogatories [Doc. 436-2]. The interrogatories ask why the personal property was removed from Kelley's person (Interrogatory Nos. 1-5), ask about Kelley's alleged consent to given the personal property to Ms. Muckle (Interrogatory Nos. 6-9), ask if the property was given to Ms. Muckle (Interrogatory No. 9) and seek identification of the female officer who searched Ms. Muckle (Interrogatory No. 10). Given that the Government has conclusively demonstrated that it no longer possess the personal property, this discovery is irrelevant to resolving the motion to return property. Similarly, Kelley's motion for a default for the return of property [Doc. 430] is based upon his failure to obtain a timely service copy of the Government's supplemental response, but the response was timely filed and Kelley has it and replied to it. As a result, the motion for default is meritless.

footnote 3 above. Upon the filing of a proper affidavit or declaration, I **RECOMMEND**[5] that Kelley's motions for the return of his property, for discovery, for default, and for leave to submit interrogatories [Doc. 422, 427, 430, & 436] be **DENIED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).