UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Nos. 1:08-cr-51-RLJ-SKL-1 |
| ) | |
| MICHAEL KELLEY ) | |
| ) | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the Court are several motions filed by Defendant Michael Kelley ("Defendant" or "Kelley"), including: (1) a motion for the return of personal property [Doc. 422],[1] (2) a motion for discovery in connection with his motion for return of property [Doc. 427], (3) a motion for a default judgment on his motion for the return of property [Doc. 430], and (4) a motion for leave to submit interrogatories upon the United States of America (the "Government") and two individual officers allegedly involved in the removal of his property [Doc. 436]. After the undersigned issued a Report and Recommendation [Doc. 437], the Court issued an order noting that neither the Report and Recommendation nor the Government specifically addressed Defendant's "request for

---

[1] The original motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b) [See Doc. 429]. The other motions addressed herein are related to the referred motion. Defendant also filed a motion for civil contempt [Doc. 461] alleging that the Government was in civil contempt with respect to the timing of its filing of an ordered supplemental response [Doc. 457]. Given the order granting the Government an extension of time, its supplemental response is timely and the motion for civil contempt [Doc. 461] is **DENIED**.

dashcam video" from his traffic stop arrest, and re-referred only the issue of Defendant's request for the dashcam video for a supplemental report [Doc. 446].

As a result, the undersigned ordered the Government to supplement its response to Defendant's pending motions to address his request for dashcam video [Doc. 447]. In response, the Government filed duplicate second supplemental responses to Defendant's motion for discovery [Docs. 448 & 449] with an attached document signed by Robert M. Pettross, a civilian employee of the Chattanooga Police Department ("CPD") Crime Scene Unit PhotoLab/Video Evidence Technician [Docs. 448-1 & 449-1].[2] In the document, which is mislabeled as an affidavit, Mr. Pettross declares under penalty of perjury that because Defendant was arrested on May 31, 2008, any digital media related to his arrest, including any dashcam video, has been purged and no longer exists pursuant to department policy [Doc. 448-1 & 449-1].

Defendant then filed a reply to the Government's response contending that because Mr. Pettross's "affidavit" was not notarized it could not be considered and, that if it were to be considered, it was inadequate to "thoroughly address[]" his discovery motion because it did not say that the *hard drives* from the law enforcement officers' vehicles were purged per department policy. Defendant also requested that the Court order a special warrant to require an "independent computer specialist" to search any hard drive recording from his arrest on May 31, 2008, "as well as the Highway 153 cameras." [Doc. 451 at Page ID # 2824-26]. Defendant also relies on *Crawford v. Washington*, 541 U.S. 36 (2004) to seek a hearing so he can cross-examine Mr. Pettross.

---

[2] Defendant originally stated the Government failed to provide the CPD's OPS-22 policy so the Government resent it to Defendant [*see* Doc. 452 at Page ID # 2830].

2

In response to the reply, the Government points out that while the first line of Mr. Pettross's "affidavit" contains the term "duly sworn," which could fairly lead Defendant to look for the absent notarization, the document concludes with a declaration that comports with 28 U.S.C. § 1746, making it a proper declaration for consideration by the Court. As to Defendant's requests for a court order allowing an independent computer specialist to search electronic media of the Chattanooga Police Department, the Tennessee Department of Transportation and the United States Marshals Service for any electronic data stored in computers or highway cameras pertaining to the May 31, 2008, arrest, the Government argues such a request is "'not proportional to the needs of the case,' and 'the burden or expense of the proposed discovery outweighs its likely benefit.'" [Doc. 452 at Page ID # 2829 (citing Fed. R. Civ. P. 26(b)(1); *see Stiger v. United States*, 100 F. App'x 370, 372 (6th Cir. 2004) (a motion for return of property filed after a criminal conviction is a civil action).)]. The Government also argues Defendant failed to demonstrate a need or a legal basis for cross-examination of Mr. Pettross and notes *Crawford* pertains to the rights of confrontation adhering to a defendant in a criminal proceeding.

Defendant filed a sur-reply to what he characterized as the Government's inappropriate supplemental response [Doc. 453]. In the sur-reply, Defendant argues the Government's claim that the affidavit is a sufficient declaration is "magical thinking," argues the Government failed to properly cite authority for its proportionality argument, claims Mr. Pettross did not have authority under the policy to purge digital media, and notes Mr. Pettross did not provide proof that *hard drives* with the recorded arrest do not exist. Defendant also requests the undersigned to issue "search warrants/recommend leave to file a Bivens complaint" against Chattanooga Police Department/Alcohol Tobacco & Firearms Task Force Officer Freeman and Deputy U.S. Marshal Ladd.

3

To consider the re-referred issue adequately, the undersigned *sua sponte* ordered the Government to address whether Mr. Pettross's statement concerning "digital media" included CPD hard drives and whether any United States Marshals Service dash camera video (including recordings on any hard drives) exist or ever existed [Doc. 454]. In answer, the Government filed a supplemental response, supported with proper supplemental affidavits of Mr. Pettross and Deputy Ladd. In summary, the Government states, "there are no existing videos of Defendant's arrest—no copies of dash camera recordings, and no copies of recordings of the arrest on any hard drives." [Doc. 460 at Page ID # 2850].

In a reply to the Government's supplemental response, Defendant first contends the Government's recitation of the procedural history of the case violates the order requiring supplementation [Doc. 462 at Page ID # 2869]. However, it is standard practice to include procedural history in various filings and by doing so the Government did not violate the Court's order. Defendant next argues that the Court cannot consider the supplemental affidavits, an argument premised on his assumption that any facts not introduced in the government's original submission cannot be later submitted (even if requested by the Court) [Doc. 462 at Page ID # 2869]. Defendant cites to cases denying a proverbial "second bite at the apple," but the cases provide no support for his suggestion that the Court cannot consider the supplemental affidavits under the circumstances as hand.[3]

---

[3] For instance, *McGrew v. Zaring Homes*, 78 F.3d 584 (6th Cir. 1996) (table) involves the introduction of additional facts in a supplement to a summary judgement motion under Fed. R. Civ. P. 56; *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) deals with a Second Amendment claim against a government-imposed lifetime ban on gun ownership; and *United States v. Meda*, 812 F.3d 502 (6th Cir. 2015) addressed a failure to present evidence to adequately challenge an alleged sentence calculation error.

As addressed in the original Report and Recommendation, Rule 41(g) provides criminal defendants with a means to seek the return of property seized by federal agents. Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.").[4] A Rule 41(g) motion that is filed after the conclusion of criminal proceedings, as is the case here, is treated as a civil action in equity. *Savoy v. United States*, 604 F.3d 929, 932 (6th Cir. 2010) (citations omitted); *United States v. Oguaju*, 107 F. App'x 541, 542 (6th Cir. 2004) (citations omitted).

Generally, seized property other than contraband should be returned after criminal proceedings have concluded, provided that the person seeking the return of the property shows that he is lawfully entitled to possess it. *Savoy*, 604 F.3d at 932-33. However, prior to obtaining relief, the person seeking the return of property must carry "his burden of showing real or constructive possession of the property by the federal government." *United States v. Obi*, 100 F. App'x 498, 499 (6th Cir. 2004); *see Bailey v. United States*, 508 F.3d 736, 740 (5th Cir. 2007) (noting that a Rule 41(g) motion must be denied "[i]f the district court finds that the government no longer possesses the [property sought] . . . because the government cannot return property it does not possess").

Rule 41(g) does not say what happens when the property in dispute has been lost or destroyed. *United States v. Droganes*, 728 F.3d 580, 589 (6th Cir. 2013) (citing *Ordonez v. United States,* 680 F.3d 1135, 1137-38 (9th Cir. 2012)). However, the Rule does not expressly authorize a defendant to sue the government for compensation when property is lost or destroyed. *Id.* at 589 (quoting *Ordonez*, 680 F.3d at 1138, 1140 (holding that "Rule 41(g) contains no express and

---

[4] Rule 41(g) was formerly under Rule 41(e) until it was redesignated in 2002. *Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012).

5

unequivocal waiver of the government's sovereign immunity.")). For this reason, the Sixth Circuit has held, as "at least nine circuits" have already held, "that sovereign immunity bars an award of money damages against the government on a Rule 41(g) motion where the property cannot be returned." *Id.* at 589 (quoting *Ordonez*, 680 F.3d at 1138 & n. 2 (collecting cases)). *See also United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990) (affirming an order denying defendant's motion for the return of property pursuant to Rule 41(e)—now Rule 41(g)—noting that a motion for the return of seized property made after the criminal trial concludes is a civil equitable proceeding).

In this case, Defendant has failed to carry his burden of showing real or constructive possession of the property by the federal government. *See Obi*, 100 F. App'x at 499; *Bailey*, 508 F.3d at 740. The original "affidavit" of Mr. Pettross [Docs. 448-1, 449-1] is not a properly sworn affidavit and, thus, it was confusing to title it as such. However, Mr. Pettross's affidavit is properly considered a sufficient declaration because it "is made under penalty of perjury, certified as true and correct, dated, and signed." *Kavanaugh v. Lexington Fayette Urban Cty. Gov't*, 638 F. App'x 446, 453 n.4 (6th Cir. 2015) (quoting *Pollock v. Pollock,* 154 F.3d 601, 611 n. 20 (6th Cir. 1998) (citing 28 U.S.C. § 1746)). *See also Walton v. Wheatly Co.*, 986 F.2d 1423 (6th Cir. 1993) (table) (noting that an unnotarized affidavit that was not acknowledged under "penalty of perjury" was insufficient to support a motion to proceed *in forma pauperis*).

Mr. Pettross's original declaration specifically states that any digital media related to Defendant's arrest, including but not limited to a dashcam video, has been purged and no longer exists. This is the exact situation contemplated by the Court in its re-referral when it noted that "it is possible that no such video ever existed (or no longer exists nearly 10 years after the defendant's arrest) . . . ." [Doc. 446 at Page ID # 2809]. Defendant's arguments that the CPD policy may not

6

have *required* the purge of the dashcam video does not counter Mr. Pettross's affirmative statement that any such dashcam video no longer exists.

Mr. Pettross's supplemental affidavit, which is a properly notarized affidavit, explains that the CPD made no recordings of Defendant's arrest except through the Digital Patroller system that was in the patrol cars and that any such recording no longer exists on either hard drives or storage servers as it would have been purged no later than January 2010 [Doc. 460-2]. As a result, there are no recordings of Defendant's arrest in the possession of the CPD.

Moreover, Deputy Ladd's supplemental affidavit states the United States Marshals Service did not use dash camera video or body-worn recording equipment in 2008 [Doc. 460-1]. As a result, no United States Marshals Service recordings of Defendant's arrest ever existed.

Given this proof, there is no need for further discovery. Defendant cannot discover dashcam recordings, and the Government cannot produce recordings, that no longer exist. *See Solly v. Mausser*, No. 2:15-cv-956, 2017 WL 4280935, at *2 (S.D. Ohio, Sep. 27, 2017) (explaining that the court cannot compel a party to produce documents or digital records "that do not exist") (citations omitted)).

Defendant continues to dispute that his property was given to the other occupant of the stopped vehicle—Ms. Muckle—at all or with his consent, and argues "the court should order [the Government] to get it back or replace it." [Doc. 434, at Page ID # 2714]. But, the Court cannot order the Government to return property that it no longer possesses. Moreover, any award of money damages is not a proper remedy on a Rule 41(g) motion. *Pitts v. United States*, 228 F. Supp. 3d 412, 418-420 (E.D. Pa. Jan. 6, 2017) (collecting cases and holding "[the] majority of courts, however, have declined to interpret Rule 41(g) as a waiver of sovereign immunity that

7

would permit a claimant to receive damages in lieu of tangible property—including money—that the government has lost or destroyed.").

An evidentiary hearing in not warranted under these circumstances. *See id.* at 418 ("An evidentiary hearing is not required to resolve every factual dispute, and sometimes 'affidavits or documentary evidence, such as chain of custody records, may be sufficient to support a fact finder's determination.'") (quoting *United States v. Albinson*, 356 F.3d 278, 282 (3rd Cir. 2004)); *United States v. Cardona-Sandoval*, 518 F.3d 13, 16 (1st Cir. 2008) ("Affidavits or documentary evidence, such as chain of custody records, may suffice to support the district court's determination in a given case."); *United States v. Crooker*, No. CR 04-30034-PBS, 2015 WL 13234478, at *2 (D. Mass. Dec. 18, 2015) (supporting the use of a government agent's affidavit in the Court's determination).

For the reasons stated above and in the original Report and Recommendation, I **RECOMMEND**[5] that Kelley's motions for the return of his property, for discovery, for default, and for leave to submit interrogatories [Doc. 422, 427, 430, & 436] be **DENIED**.

s/ *Susan K. Lee*  
SUSAN K. LEE  
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).